[Sac. No. 2890. In Bank.—July 5, 1921.]

STATE OF CALIFORNIA, Respondent, v. SECURITY SAVINGS BANK (a Corporation), et al., Defendants; SECURITY SAVINGS BANK (a Corporation), Appellant.

[1] ESCHEAT—UNCLAIMED BANK DEPOSITS—PROCESS AND NOTICE IN ACTIONS—BANK ACT AND SECTION 1273 OF THE CODE OF CIVIL PROCEDURE—CONSTRUCTION.—Section 15 of the Bank Act, amended in 1915, (Stats. 1915, p. 107), relating to the deposit of unclaimed bank deposits with the state treasurer, and section 1273 of the Code of Civil Procedure, added to the code in 1915, (Stats. 1915, p. 1106), although separately enacted, relate to the same subject, and are to be considered and construed as if both were contained in a single act, at least with reference to the provisions for process and notice in the action under the code section.

[2] ID.—APPLICABILITY OF STATUTES TO GENERAL DEPOSITS—CONSTRUCTION OF ENACTMENTS.—Section 15 of the Bank Act and section 1273 of the Code of Civil Procedure, notwithstanding the language of the statutes, were not intended to apply exclusively to moneys in the custody of a bank as bailee of its depositors, although possibly it might include such special deposits.

[3] BANKING LAW—GENERAL DEPOSIT—RELATIONSHIP OF DEBTOR AND CREDITOR.—When a general deposit is made with a bank, the title to the money delivered to it passes at once to the bank and the relation thereby established is that of debtor and creditor and not that of bailee and bailor.

[4] ESCHEAT—ACTION BY STATE—VALIDITY OF LAW—RIGHT OF CHALLENGE BY BANK.—In an action by the state to declare an escheat of bank deposits under the provisions of section 1273 of the Code of Civil Procedure, the bank has an interest sufficient to authorize it to challenge the validity of the law on its own account.

[5] ID.—PLEADING—PARTIES—DEPOSITOR NECESSARY PARTY—RIGHT OF BANK.—In an action by the state to declare an escheat of a bank deposit, the depositor is a necessary party and the bank has the right to insist that the depositor be brought in the case as a party by some notice or process that the law recognizes as valid, and therefore has the right to contend that the process and notice prescribed by section 15 of the Bank Act and section 1273 of the Code of Civil Procedure do not constitute due process of law.

1. Escheat of bank deposits, note, Ann. Cas. 1914B, 157.
2. Special deposits as distinguished from general, notes, Ann. Cas. 1913E, 45; Ann. Cas. 1918B, 390.

[6] ID.—NATURE OF PROCEEDING—EFFECT OF SERVICE UPON BANK.—
The proceeding authorized by section 1273 of the Code of Civil
Procedure for the escheat of unclaimed bank deposits is not an
action *in personam,* but is a proceeding *quasi in rem,* and the
service of the summons on the bank is the equivalent of a seizure
of the property of the depositor in his account with the bank and
gives the court jurisdiction over it to the same extent as in
cases in garnishment and other proceedings *quasi in rem.*

[7] CONSTITUTIONAL LAW—ADJUDICATION OF OWNERSHIP OF PROPERTY
—CHARACTER OF PROCESS—POWER OF STATE.—The state has the
power to dispose of the ownership of property and adjudicate the
title thereto without personal notice to the owner thereof, pro-
vided the substituted notice is reasonable and adequate.

[8] ESCHEAT—ACTION BY STATE—PROCESS—PUBLICATION IN NEWS-
PAPER IN SACRAMENTO COUNTY—VALIDITY OF PROVISION.—The pro-
vision of section 1273 of the Code of Civil Procedure that service
of process in actions by the state to declare an escheat of un-
claimed bank deposits shall be made by publication of a copy of
the summons in a newspaper of general circulation published in
the county of Sacramento is a reasonable and adequate notice to
depositors even though the deposits are in banks doing business in
other counties, in view of the nature of the proceeding and the
character of the property affected thereby.

[9] ID.—PUBLICATION OF SUMMONS—PRELIMINARY PROOF—OMISSION
OF REQUIREMENT—CONSTITUTIONALITY OF STATUTE.—The provision
of section 1273 of the Code of Civil Procedure for service of
process by publication of a copy of the summons in a newspaper
of general circulation published in Sacramento County is not vio-
lative of the due process of law provision of the constitution be-
cause of the omission to require preliminary proof as foundation
for the publication that the depositor resides out of the state or
has departed from the state, or cannot after due diligence be
found within the state, or conceals himself to avoid service.

APPEAL from a judgment of the Superior Court of Sacra-
mento County.   Peter J. Shields, Judge.   Affirmed.

The facts are stated in the opinion of the court.

McCutchen & Willard and McCutchen, Willard, Mannon
& Greene for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena,
Deputy Attorney-General, for Respondent.

Chas. S. Conner, *Amicus Curiae.*

SHAW, J.—This is an action by the state of California to declare an escheat of certain bank deposits, under the provisions of section 1273 of the Code of Civil Procedure. Judgment was given for the plaintiff in the court below. The defendant bank alone appeals.

Section 1273 declares that when money is on deposit in a bank in this state and the depositor does not for a period of more than twenty years deposit any more money in the account, nor draw out any part thereof, nor claim the same, and neither the depositor nor any claimant has filed with the bank any notice of his present residence, such deposit, with the accumulations of interest thereon, shall escheat to the state.

The section then further provides that the attorney-general, on being informed of such deposits, "shall commence an action or actions in the name of the state of California, in the superior court of the county of Sacramento, in which shall be joined as parties the bank or banks in which the moneys are deposited and the names of all such depositors."

With respect to process the section declares: "Service of process in such action or actions shall be made by delivery of a copy of the complaint and summons to the president, cashier or managing officer of each defendant bank, and by publication of a copy of such summons in a newspaper of general circulation published in said county for a period of four weeks."

All or any number of banks or depositors may be included in one action. Upon the trial, if it be determined that the moneys deposited in any bank are unclaimed, as previously stated, the court must render judgment in favor of the state, declaring that said moneys have escheated to the state and directing payment thereof into the state treasury. This section was added to the code in 1915. (Stats. 1915, p. 107.) At the same session section 15 of the Bank Act was amended. (Stats. 1915, p. 1106.) It provides that moneys remaining unclaimed in a bank by a depositor who had not drawn any money therefrom or made any further deposits thereto, nor filed any notice of residence, for the period of twenty years, shall be deposited with the state treasurer, "after judgment in the manner provided in the Code of Civil Procedure." It further provides that: "At the time of issuing the summons

in the action provided for in section 1273 of the Code of Civil Procedure, the clerk shall also issue a notice signed by him, giving the title and number of said action, and referring to the complaint therein, and directed to all persons, other than those named as defendants therein, claiming any interest in any deposit mentioned in said complaint, and requiring them to appear within sixty days after the first publication of such summons, and show cause, if any they have, why the moneys involved in said action should not be deposited with the state treasurer as in said section provided, and notifying them that if they do not so appear and show cause, the state will apply to the court for the relief demanded in the complaint. A copy of said notice shall be attached to and published with the copy of said summons required to be published by said section, and at the end of the copy of such notice so published there shall be a statement of the date of the first publication of said summons and notice.''

This section further provides that upon the completion of the publication of the summons and notice and the service of the summons ''the court shall have full and complete jurisdiction over the state and the said deposits and of the person of every one having or claiming any interest in the said deposits, or any of them, and shall have full and complete jurisdiction to hear and determine the issues therein, and render the appropriate judgment thereon.''

The case presents the single question whether or not the provisions of the statute requiring process in actions of this character are valid under the fourteenth amendment of the constitution of the United States and section 13, article I, of our constitution, providing that no person shall be deprived of his property without due process of law.

[1] It is clear that section 15 of the Banking Act and section 1273 aforesaid, although separately enacted, relate to the same subject, and are to be considered and construed as if both were contained in a single act, at least with respect to the provisions for process and notice in the action under section 1273. The provisions for notice in section 15 apply to such an action and constitute a part of the process necessary to confer jurisdiction upon the court to proceed therein.

These statutes speak of "amounts of money . . . deposited with any bank," and which "have remained unclaimed," they refer to the "money deposited," and state that such "moneys" escheat to the state, and provide for judgment, "commanding said bank to forthwith deposit all such moneys with the state treasurer." This language, if taken literally according to its legal significance, would be appropriate to describe money in the custody of the bank as bailee of its depositors. [2] It is evident, however, from the context and from the purpose and object to be accomplished, that it was not intended to apply exclusively to moneys held by the bank as such custodian or bailee, although possibly it might include such special deposits. It is not an accurate use of language to speak of the general deposits in an ordinary bank as the money of the depositors. [3] When a general deposit is made with a bank, the title to the money delivered to it passes at once to the bank. The relation thereby established between the bank and the depositor is that of debtor and creditor and not that of bailee and bailor. The bank is the debtor and the depositor the creditor to the amount of the deposit. It is of some importance, in view of the argument presented, to note that the statutes in question do not provide for an actual seizure of any money, either before or after the judgment, but do provide, with respect to each depositor, for the payment to the state by the bank of the debt the bank owes to the depositor.

The only appellant in the case is the Security Savings Bank. None of the depositors appeared in the action and their rights cannot be here adjudicated, except so far as may be necessary in determining the rights of the bank.

The appellant claims that the law is void in all particulars because the notices provided in the action are not sufficient with respect to the depositors whose rights are to be affected thereby, and that as the judgment provided for, when given, requires the bank to pay the money due the depositors into the state treasury without their consent, it is invalid as to the bank itself, because such judgment will not protect it against the subsequent demands of the depositors in case they should appear and claim the money so deposited.

[4] It is claimed on behalf of the state, as a preliminary objection, that the defendant bank has no interest which authorizes it to dispute the validity of the law with respect to

the depositors. It is not necessary to determine whether or not it could vicariously for its depositors raise the objection that the law is invalid as to them. The bank has an interest sufficient to authorize it to challenge the validity of the law on its own account. The deposit, as above shown, creates a contract between the bank and its depositors whereby the bank takes the money of the depositor and agrees to repay the amount thereof in whole or in part at any time on demand. Until payment is demanded by the depositor the bank may loan the money deposited with it, or a large part thereof, at interest for its own benefit. It therefore has an interest in keeping the money and the right to refuse payment on a deposit account until demand therefor is made by the depositor, or someone by him authorized, or by his successor in interest. It follows that if such demand is made by another, the bank may require from such person reasonable proof of his authority. And when a third person who has not acquired the legal title to the chose in action of the depositor, but who merely claims a right to demand and receive payment of the amount deposited, sues the bank to enforce such claim, the bank has the right, for its own protection, to insist that the depositor be made a party to the action to answer as to his interest. "The person with the legal title to the demand in question should usually be made a party, as otherwise he might proceed at law notwithstanding the decree." (15 Ency. Pl. & Pr., 593; see, also, *Wilson v. Castro,* 31 Cal. 427.) It cannot be doubted that the state is not the holder of the legal title of the depositor. That title has not been transferred to the state by any act of the depositor, and the state cannot by a mere statutory declaration take away the right of the depositor and appropriate to its own use his property therein. (Const., art. I, sec. 13.) [5] The depositor is, therefore, a necessary party to any action by the state to enforce payment of the money due on the deposits into the state treasury, and the bank has the right to insist that the depositors be brought into the case as parties by some process or notice that the law recognizes as valid. It, therefore, has the right to contend that the process and notice prescribed by these statutes do not constitute due process of law.

The claim of the bank in that behalf is that in order to make a valid service of process upon the depositors, there

must be either personal service upon them, or valid constructive service; that in an action in which the judgment asked for may ultimately deprive the depositors of the title to their demands against the bank, as is the case here, the service of the process against those who reside in the state and can be found therein must be a personal service upon them and each of them, and that there can be no valid constructive service upon any of them, unless it is shown to the satisfaction of the court that the persons so served are not residents of the state, or are absent therefrom, or have concealed themselves to avoid service of process, or cannot with due diligence be found therein. The statute does not require any showing of the facts thus claimed to be necessary to authorize a constructive service, and it does not require personal service upon any of the depositors. The record does not show that any personal service has been made on any of them or that any showing was made preliminary to the publication of the summons and notice or at all, to the effect that the depositors, or any of them, are nonresidents or absent from the state or have concealed themselves to avoid service of process, or cannot with due diligence be found in the state. If the contention of the bank in this respect is sound, the statute is contrary to the constitution, both of this state and of the United States, in failing to require due process of law on the parties whose property is to be taken, and the entire proceeding is without force or validity.

[6] The argument of the appellant on this subject is mainly based on the proposition that the proceeding authorized by section 1273 is an action *in personam* and that the judgment therein to be rendered is a personal judgment against the bank and the several depositors made defendants therein. This proposition is not maintainable. The judgment does not seek to declare or enforce any obligation of the depositors or any of them to any other person or persons. Its sole object with respect to them is to act upon the obligations they respectively hold against the bank, to effect a substitution of the state for the bank with respect to such obligation, and to transfer the title of that particular property of the depositors, respectively, to the state. Such proceedings are not proceedings strictly *in rem;* but they are proceedings *quasi in rem.* The proceeding is not in that

respect distinguishable from an ordinary garnishee process against a debtor of a defendant to appropriate the debt to the payment of the plaintiff's demand. In such cases the defendant in the action may be a nonresident or not within reach of the process of the state court. But if service is made on the garnishee, the court has jurisdiction to dispose of that asset of the defendant and apply it to the payment of the plaintiff's debt. In *Pennoyer* v. *Neff*, 95 U. S. 727, [24 L. Ed. 565, see, also, Rose's U. S. Notes], the court said: "The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.*" The court was there discussing the validity of attachment proceedings against one who was a nonresident of the state and had no service of process except by publication. In *Cooper* v. *Reynolds*, 77 U. S. (10 Wall.) 317, [19 L. Ed. 931, see, also, Rose's U. S. Notes], the court was considering the validity of a sale rendered upon a judgment in attachment where the only service upon the defendant was by publication. The court said: "Jurisdiction of the *res* is obtained by a seizure under process of the court, whereby it is held to abide such order as the court may make concerning it. . . . So also while the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which being incapable of removal, and lying within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the

officer's levy of the writ and return of that fact to the court. So the writ of garnishment or attachment, or other form of service, on a party holding a fund which becomes the subject of litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court." The service of the summons on the bank is, under the doctrine thus established, the equivalent of a seizure of the property of each depositor in his account with the bank and gives the court jurisdiction over it to the same extent as in cases in garnishment and other proceedings *quasi in rem.* To the same point, see 6 Corpus Juris, page 90, where many cases are cited.

[7] With respect to the question of the kind of process necessary against the owner of the chose in action in such cases, the rule is declared to be that the state has power to dispose of such specific property and adjudicate the title thereto without personal notice to the owner thereof, provided the substituted notice is reasonable and adequate. In *Roller* v. *Holly,* 176 U. S. 409, [44 L. Ed. 520, 20 Sup. Ct. Rep. 414, see, also, Rose's U. S. Notes], on this point the court said: "It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose." In *Arndt* v. *Griggs,* 134 U. S. 321, [33 L. Ed. 918, 10 Sup. Ct. Rep. 559], in a decision holding that a decree to quiet title to real estate was valid if made upon a regular service by publication, the court said that the state "has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligation, private or public, and the modes of establishing titles thereto. It cannot bring the person of a nonresident within its limits—its process goes not out beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice."

[8] This brings us to the question whether or not the notice to the depositors provided by the statute is reasonable and adequate under the circumstances.

It is not contended that the facts required to be stated in the summons and notice to be published are insufficient to apprise any depositor who may read them of the nature of the proceeding and the object sought. The only serious objection to the efficacy of the publication as notice is that the statute requires nothing more than that it be made in a newspaper of general circulation published in Sacramento County, and that this is not a reasonable notice with respect to persons having deposits in banks doing business in other counties. We see no force in this objection. A person may bring an action in any county in the state to recover money due on contract, may obtain jurisdiction of the defendant for the purpose of attachment by publication, and may serve garnishee process on any debtor of the defendant who can be found in any county of the state. (Code Civ. Proc., secs. 412, 413, 540, 542, subd. 5.) The superior court of such county has jurisdiction of such action, although the defendant may never have resided therein and the person served as garnishee may reside in some other county and the contract may have been made elsewhere. The publication in such cases in the county in which the suit is brought is the universal practice. Yet it would be no more likely to give notice to the defendant in the action than the notice provided for in these statutes. The validity of judgments regularly obtained in that manner has never been questioned. Our numerous statutes provide for many proceedings either strictly *in rem* or *quasi in rem*, in which the property rights of individuals are affected and the notice provided for is solely by publication in some newspaper, or, in some instances, by merely the posting of notices in public places in the county, and in which the residence of the person to be affected thereby is regarded as immaterial to the validity of the proceeding. (*Crall* v. *Poso Irr. Dist.*, 87 Cal. 148, [26 Pac. 797]; *Estate of Warfield*, 22 Cal. 63, [83 Am. Dec. 49]; *Rogers* v. *King*, 22 Cal. 72; *Halleck* v. *Moss*, 22 Cal. 274; *State* v. *McGlynn*, 20 Cal. 270, [81 Am. Dec. 118]; *Irwin* v. *Scriber*, 18 Cal. 500.) In *Bennett* v. *Creditors*, 22 Cal. 41, and *Brewster* v. *Ludekins*, 19 Cal. 170, it was held that the court acquired jurisdiction, under the statute (Stats. 1860, p. 283), to discharge an insolvent upon notice by publication for four weeks in a newspaper of the county in which the debtor resides. Many similar examples could be

given, but we deem it unnecessary to pursue this subject
further.

In view of the nature of the proceeding, the character of
the property to be affected thereby, and the conditions to
which they apply, we think it cannot be said that the method
prescribed for imparting notice to the depositor is unreason-
able or inadequate.  The complaint must show that the de-
posit accounts in question have remained unclaimed and un-
changed by any deposit or withdrawal for a period of
twenty years, and that no person claiming it has filed any
notice with the bank showing his present residence.  Ever
since the year 1893, every savings bank in the state has been
required to publish annually in a newspaper of the city or
town in which it is situated a sworn statement showing the
amount of each deposit therein, the name and last known
residence of each depositor, and the fact of his death, if
known, in all cases where the depositor has not made a de-
posit or withdrawal for more than ten years next preceding,
except where the depositor is known to be living and the
deposit is less than fifty dollars.  (Stats. 1893, p. 183.)  In
1897 these requirements were extended to all banks of de-
posit.  (Stats. 1897, p. 27.)  In 1905 these provisions were
incorporated into the code.  (Civ. Code, sec. 583b.)  It is
to be presumed that these statutes have been obeyed by the
banks concerned.  It may fairly be inferred that the owner
of a deposit under fifty dollars who has not claimed it for
twenty years has either forgotten it or abandoned it.  It is
altogether improbable, after these annual publications of de-
posits over fifty dollars, that any person who resided in the
county in which the bank was situated would remain ig-
norant thereof, or that, being aware of it, he would not have
claimed it before twenty years had elapsed.  It may reason-
ably be presumed that the owners of such accounts are non-
residents of such county or of the state, or that they are
dead and that their next of kin are nonresidents.  It would
follow that no county would be a more suitable place in
which to give a general notice of this character than the
county of Sacramento.  The legislature is the authority that
must determine questions of this character, and the deter-
mination is final unless the court can say that it is unrea-
sonable.  As we are unable to reach such conclusion, we
must hold the provision valid.

[9] The further claim is made that there can be no valid service by publication in any case unless there has been some preliminary proof to the court as foundation therefor that the person to be affected by the published notice resides out of the state or has departed from the state, or cannot after due diligence be found within the state, or conceals himself to avoid service of summons. One or the other of these facts are required to be stated, by the code, in order to obtain an order for publication of summons in an ordinary action. (Code Civ. Proc., sec. 412.) We are cited to no decision holding that preliminary proof to the court of either of these things is essential to constitute due process of law in case of service by publication. There are, of course, very many decisions holding that a publication under the code cannot be valid unless this section is complied with. But such decisions do not establish the proposition that the legislature is without power to authorize service by publication in any case where such facts are not establishel *prima facie* by some preliminary showing. The decisions already cited show that rights can be affected and changed upon notice by publication without such preliminary showing. We perceive no reason why the legislature, when providing for a special class of persons such as the depositors here in question, may not itself determine that the facts authorize a substituted service. We are of the opinion that it is within the power of the state, under circumstances such as appear in the present case, to take charge of the deposits such as are here involved, upon the general notice provided by this statute. (*Cunnius* v. *Reading School Dist.*, 198 U. S. 470, [3 Ann. Cas. 1121, 49 L. Ed. 1125, 25 Sup. Ct. Rep. 721, see, also, Rose's U. S. Notes]; *Nelson* v. *Blinn*, 197 Mass. 279, [125 Am. St. Rep. 364, 14 Ann. Cas. 147, 15 L. R. A. (N. S.) 651, 83 N. E. 889].)

Section 1272 of the Code of Civil Procedure allows "any person not a party or privy" to "any proceeding had under this title" to petition the court at any time within five years after final judgment in such proceeding for another judgment directing that the property declared in the previous judgment to have escheated to the state be delivered to him, or if it is money, that the amount be paid to him by the state, and be declared to be his own. The title referred to is title VIII, the subhead of which is "Escheated Estates," and it

includes sections 1272 and 1273. Although the language of section 1273, literally interpreted, would bar all persons whatever from afterward claiming the property adjudged to have escheated, section 1272 indicates that it was not intended to be final except as to persons who were "parties or privies" to the proceeding. As the process provided for in the proceeding under section 1273 purports to run to all the world, it may be difficult to give effect to the phrase "party or privy," as used in section 1272, unless it is confined to persons who appeared in the proceeding and those claiming under such persons. If it has this meaning, the judgment under section 1273 does not finally bar the depositors or others interested who did not appear, but merely sets the five-year period running against them. As we remarked at the outset, no persons appeared or appealed except the bank, and the rights of other persons cannot be adjudicated on this appeal. Consequently we express no opinion upon the question just stated. We mention it only to forestall the inference that we have decided it by implication.

It may be true, as the appellant insists, that the result of proceedings under this statute may in rare instances operate unjustly upon depositors, even if they have an additional five years in which to appear. This objection is answered by the supreme court of the United States in *Blinn* v. *Nelson,* 222 U. S. 7, [Ann. Cas. 1913B, 555, 56 L. Ed. 65, 32 Sup. Ct. Rep. 2], by the following remark: "Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances no doubt justice will be done."

We find no ground upon which the appeal can be sustained.

The judgment is affirmed.

Wilbur, J., Sloane, J., Lawlor, J., Lennon, J., and Angellotti, C. J., concurred.