## In re FRENCH'S ESTATE.

No. 4117.   Decided July 29, 1924.   (228 Pac. 194.)

1. ESCHEAT—UNADMINISTERED ESTATE HELD NOT TO ESCHEAT AS AGAINST CLAIMANT APPEARING DURING ADMINISTRATION.  Unadministered estate of decedent, not known for a time to be dead, *held* not to escheat to state by operation of law, as against unnotified claimant appearing more than five years after decedent's death, but before completion of administration of estate, under Comp. Laws 1917, §§ 7779-7787, providing for escheat "if no claimant appears within five years after decedent's death," especially in view of necessity for due process of law.

2. ESCHEAT—STATE ENTITLED TO INTERVENE IN PROBATE PROCEEDING TO CLAIM ESCHEAT.  State may intervene in probate proceedings for administration of an estate, to claim decedent's property by virtue of Comp. Laws 1917, §§ 7779-7787, regulating escheats, though more orderly procedure would be to appear in response to statutory notice of distribution.

See 21 C. J. §§ 2, 15.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

Proceeding for administration of the estate of George O. French, deceased, in which the State of Utah intervened. Judgment of dismissal, and intervener appeals.

AFFIRMED.

*Harvey H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen., for the State.

*Fabian & Clendenin*, of Salt Lake City, for respondent.

FRICK, J.

The state of Utah prosecutes this appeal from a judg-

ment of the district court of Salt Lake county dismissing, its complaint in intervention in a certain probate proceeding pending in said court.

The state, in its complaint in substance alleged that one George O. French died intestate on the 22d day of November, 1915; that at the time of his death he left an estate in the state of Utah "consisting of money on deposit in Zion Savings Bank & Trust Company amounting approximately to $23,000; that no claimant appeared within five years after the death of said George O. French, deceased, to claim succession, to wit, prior to November 22, 1920, and that thereupon, to wit, the 22d day of November, 1920, the said estate of George O. French, deceased,  *  *  *  escheated to the state of Utah for the benefit of the state school fund." It is then alleged that one Gregory T. Van Meter, the public administrator of Cook county, state of Illinois, was by the probate court of said Cook county duly appointed administrator of the estate of said George O. French, deceased, and that thereafter, upon petition duly filed in the district court of Salt Lake county praying for ancillary letters of administration, one Beverly S. Clendenin was appointed as ancillary administrator of said estate; that afterwards in an amended petition it was alleged that one Clarence Dopp "was a half-brother and heir at law of the said George O. French, deceased"; that thereafter, on the 7th day of August, 1922, the said estate consisting of the money aforesaid, together with accrued interest, "which had escheated to the state of Utah as aforesaid," was paid "to said Clendenin as ancillary administrator of said estate, and that said administrator is in possession of said money," etc. The complaint in intervention prayed for an order that Gregory T. Van Meter, the domiciliary administrator, the said Clendenin, as the ancillary administrator, and the said Clarence Dopp, the alleged heir at law of said George O. French, be required to show cause "why an order should not be made and entered by the court declaring the said sum of approximately $25,000 in possession of said Beverly S. Clendenin, as such ancillary administrator of said estate,

escheated to the state of Utah," and that the said money be paid "into the state treasury" for the benefit of the school fund.

Van Meter, Dopp, and Clendenin appeared and filed a joint general demurrer to the state's complaint in intervention. The demurrer was overruled, and the three demurrants filed a joint answer to the complaint in intervention. In view of what follows it is not necessary to set forth the averments of the answer.

After the answer was filed, the Attorney General, on behalf of the state, and the three answering defendants, on their behalf, entered into an agreed statement of facts and submitted the cause to the court upon the facts agreed upon. The court adopted the statement of facts as its findings. In view that the facts as agreed upon go into great detail, we shall not set them forth in full, but without omitting any of the salient facts, shall endeavor to condense them as far as possible.

From the agreed statement of facts it appears that said decedent was a resident and citizen of Chicago, Cook county, Ill., and that he died there on the 22d day of November, 1915, intestate, leaving property in said county and state, "and leaving surviving him as his only heir at law the said Clarence Dopp, a half-brother" and a citizen of the state of Michigan; that neither said decedent nor said Dopp ever were residents or citizens of the state of Utah; that the deceased, at the time of his death, had money on deposit in a savings bank at Salt Lake City amounting to $22,000, said money having been transmitted to said bank by said decedent from New York City, and said deposit was evidenced by certificates of deposit and a savings bank book, all of which were in the possession of the deceased at the time of his death; that on the 22d day of November, 1920, five years after the death of said decedent, the interest on said deposit amounted to $3,223.50; that the body of said decedent was found in the Chicago river on the 22d day of November, 1915, and was disposed of at that time as an unidentified body; that the identity of the body disposed

of as aforesaid was not determined until the month of January, 1922; that the said decedent was last seen alive by one who knew him on November 11, 1915, and, although diligently advertised and searched for by those who knew him in his lifetime, the identity of the decedent was not established until in January, 1922; that, immediately after the body found as aforesaid was identified as the body of George O. French, application for administration of his estate was filed, and, on the 28th day of January, 1922, said Gregory T. Van Meter, the public administrator of Cook county, Ill., was duly appointed the domiciliary administrator of the estate of the decedent, and thereafter said Clendenin was, upon application to the district court of Salt Lake county, duly appointed the ancillary administrator of the estate of said decedent, and said Clendenin is now the acting and qualified ancillary administrator of the estate of the decedent. It is further found that no one other than said Dopp has appeared as an heir or otherwise, although notice has been duly published, etc. The money on deposit, with accrued interest, on the 7th day of August, 1922, was found to be $25,685.20, all of which was paid to said Clendenin as the ancillary administrator of the deceased estate. The court also found the presumption of law prevailing in the state of Illinois respecting the death of those who disappear and after diligent search are not found within a period of seven years; and further found the amount of costs and expenses incurred, etc., all of which is not material to this decision. The court concluded its findings with the statement that no claimant for the money had appeared in the state of Utah "until more than five years after the death of said George O. French * * * to claim succession to the estate of said decedent," and that no claim was made by any one in the state of Utah until "the 2d day of February, 1922, when the petition for ancillary letters of administration was filed."

As a conclusion of law the court found that said estate "has not escheated, and is not subject to escheat to the state of Utah for the benefit of the state school fund." As a

further conclusion of law the court also found that the state of Utah is not entitled to intervene in these proceedings. Judgment was accordingly entered against the state of Utah.

The Attorney General very vigorously contends that upon the conceded facts the lower court erred in its conclusions of law. He insists that, in view that it is conceded that no one appeared in Utah to claim succession to the estate of the deceased until more than five years after his death had elapsed the whole of the decedent's estate escheated to the state of Utah for the benefit of the state school fund. The Attorney General asserts that both our statute and the general law relating to the subject of escheat support his contention.

We shall first proceed to consider our statutes relating to the subject of escheat.

Comp. Laws Utah 1917, §§ 7779 to 7787, under the subhead "Absent Heirs and Escheats," provide as follows: section 7779 merely provides for the distribution of the estates of decedents who were nonresidents in due course of administration and is not especially material here. Section 7780 likewise is immaterial. Section 7781 provides for the appointment by the court of an agent for absent heirs in case an order for distribution has been made on an estate which is in due course of administration. Section 7782 provides for a bond to be given by the agent appointed as aforesaid, and for his compensation, allowances and expenses. Section 7783 requires that an annual report be made by the agent, and section 7784 provides that, if an estate consists of personal and real property, and is distributed in kind, the court may direct a sale of the property, which sale must be conducted in the same manner as are sales of the property of decedents generally. It is then provided that in case the property is sold and converted into money, the same, after deducting the expenses of sale, etc., must be paid into the state treasury, and receipts taken and filed therefor as hereinafter provided. Section 7785 reads as follows:

"When any person appears and claims the money paid into the treasury, the court making the distribution must inquire into such

claim, and, being first satisfied of his right thereto, must grant him a certificate to that effect, under its seal; and, upon presentation of the certificate to him, the county clerk must draw his requisition on the state auditor for the amount, and, upon presentation to him of such requisition, the state auditor shall draw his warrant on the state treasurer in the sum called for in said requisition. If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

It will be observed that in all of the foregoing sections it is conclusively implied or assumed that the death of the owner of the property is known, and that his estate has been duly administered upon, or, at least, is in process of administration. It is also implied that the heirs of the decedent, if any survive him, may or may not be known. The agent provided for in section 7781 no doubt must account to the heirs, if known, and, if not known, then he must proceed as pointed out by the statute and deal with the property as directed by the court. Finally, section 7785 concludes with the injunction:

"If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

The Attorney General contends that this provision means just what it says, namely, that, in case no one claims succession within five years after the death of the decedent the estate escheats to the state.

In order to determine the true meaning of the language used and the real intention of the Legislature, we must keep in mind all that is said in all of the sections referred to, and also consider in connection therewith what is necessarily implied. We therefore are not permitted to consider only the last sentence of section 7785, but must consider all that is said, and necessarily implied, upon the subject, and when that is done, in our judgment, no confusion can arise.

All the sections to which reference has been made deal with estates which are claimed by absent heirs. True, the residence of some or all of the absent heirs may be unknown. Again, all of the estates referred to in those sections are assumed to be in due process of administration. In-

deed, no other estates are referred to in any of those sections. The concluding reference to such estates is therefore properly inserted in section 7785, where it is provided that in case no claimant of the state appear within five years the estate shall escheat to the state. This provision has reference only to such estates as have been duly administered upon after the death of the owner of the estate. The fact of the owner's death, therefore, must have been known and judicially determined and his estate administered upon in due course of law.

In view of what is said in the sections referred to, there is, there can be, no escape from the foregoing conclusions.

Under the conceded facts of this case, however, the death of George O. French, the owner of the estate, was unknown until January, 1922. True it is, his death occurred before that time, but the fact remained undisclosed and unknown until January, 1922. The presumption therefore prevailed that he was still living. Just as soon as his death became known, however, application for administration of his estate was duly made, and his estate was in process of administration when the state attempted to intervene in the probate proceeding. As before stated, the estate in question is therefore not one which comes within the provisions of the several sections to which reference has been made. Does it come within the remaining two sections, namely, sections 7786 and 7787, which relate to the subject of escheat and to which no reference has as yet been made?

Section 7786 provides:

"When any person has died, or shall hereafter die, intestate and without heirs, leaving property in this state, it shall be the duty of the court, upon notice of that fact, to appoint a special administrator to take charge of such property. The special administrator shall give a bond conditioned for the faithful performance of his trust, and shall annually render to the court appointing him a detailed account of the condition of the estate. The special administrator may sue and be sued, and he shall be allowed by the court, out of the proceeds of the estate, a reasonable sum for his services and expenses."

Section 7787 reads:

"At the expiration of two years after such appointment, if no

claimant shall have appeared and established his right to the estate, the same shall be deemed to have escheated to the state, and the court shall direct the sale of all of the property, and shall cause the proceeds thereof, after the payment of debts and expenses, and taxes, to be paid into the state treasury for the benefit of the state school fund. The special administrator shall deposit a receipt for such payment with the state auditor, and a duplicate thereof with the county clerk."

These two sections cover all cases where decedents die intestate and without heirs. But even in these two sections it is clearly implied that the death of the owner is known and his estate is being administered upon in due course. If, therefore, George O. French had died in 1915 as alleged, and his estate had been duly administered upon as provided in the statutes, and no claimant had appeared within two years after the appointment of the special administrator provided for in section 7786, it might well have been that the estate would have escheated to the state of Utah. In view, however, that that question is not now before us, we express no opinion upon it. The facts, however, present no such case, and hence no escheat can be claimed under sections 7786 and 7787. We have already pointed out that escheat cannot successfully be claimed by the state under the sections preceding sections 7786 and 7787, for the reason that those sections do not contemplate that an estate escheats without administering upon it after the death of the owner is known and established.

Nor, in our judgment, can the state's contention be sustained under the law as it is declared by the courts respecting escheats. The contention of the Attorney General is that the law is to the effect that in case no claimant appears to claim succession to the estate within five years after the death of the owner, whether such death is known or unknown, the estate, nevertheless, ipso facto, escheats to the state without any proceedings or process of any kind or character. It is true that in case of alien decedents, who have no inheritable blood, it has been held that such a result may follow, not, strictly speaking, by escheat, but by operation of law. *Estate of Pendergast,* 143 Cal. 135, 76 Pac. 962. That case is approved and followed in *State* v. *Miller,* 149 Cal. 208, 85 Pac. 609. In a more recent case, how-

ever, *State* v. *Security Savings Bank*, 186 Cal. 419, 199 Pac. 791, it is held that, in case the decedent is not an alien, but has inheritable blood, no escheat can take place without due process of law. In other words, the heir, if there be one, cannot be divested of his property without some appropriate notice followed by some proceeding in which the right of escheat is judicially determined. The cast last cited contains a very exhaustive, as well as very interesting, review of the questions involved in determining whether property has or has not escheated to the state. We can do no more than to refer the reader to the case for further information.

*Matthews* v. *Savings, etc., Co.*, 43 Cal. App. 45, 184 Pac. 418, is another very interesting case. In that case it is made to appear that the California statute provides that, in case money is deposited in a bank, and such deposit shall remain in the bank for more than twenty years, ''when neither the depositor nor any claimant has filed notice with such bank showing his or her present residence,'' then the money ''shall be deposited with the state treasurer after judgment in the manner provided in the Code of Civil Procedure.'' In that case no claimant of the money appeared until more than the 20-year period had elapsed. A demand for the money was then made upon the bank; that is, after the 20-year period had elapsed, but before the state had instituted any proceedings to have the money paid into the state treasury. The Attorney General of California, on behalf of the state, claimed the money on the ground that no claimant had appeared until after the 20-year period had expired. The court, however, held that, the claimant having appeared before the state had obtained the judgment provided for in the statute, the money should be awarded to the claimant, notwithstanding that the 20-year period had fully elapsed before the demand for the money was made. It will be observed that in that case, as in the instant one, the time within which a claimant was required to make a demand for the money had elapsed before such demand was made. The court nevertheless held that, inasmuch as a claimant had appeared and made demand before the state had obtained judgment

and appropriated the money, the claimant should prevail. In that case the contention of the Attorney General of California that, in view that no claimant had appeared until the statutory period had fully elapsed, the title to the money had, ipso facto and without any proceedings, vested in the state was overruled. The decision of the Court of Appeals, on application to the Supreme Court of California, was affirmed by the latter court.

It is true that the Supreme Court of California is firmly committed to the doctrine that in no case can the property of a citizen be escheated to the state without due process of law. That court, however, is not without support, as appears from the decisions of other courts of last resort. The Supreme Court of the United States, which is the ultimate authority upon what constitutes due process of law and when it applies, in *Hamilton* v. *Brown*, 161 U. S., at page 275 (16 Sup. Ct. 592, 40 L. Ed. 691), lays down the following doctrine respecting escheats. It is there said:

"When a man dies, the Legislature is under no constitutional obligation to leave the title to his property, real or personal, in abeyance for an indefinite period; but it may provide for promptly ascertaining, by appropriate judicial proceedings, who has succeeded to his estate. If such proceedings are had, after actual notice by service of summons to all known claimants, and constructive notice by publication to all possible claimants who are unknown, the final determination of the right of succession, either among private persons, as in the ordinary administration of estates, or between all persons and the state, as by inquest of office or similar process to determine whether the estate has escheated to the public, is due process of law; and a statute providing for such proceedings and determination does not impair the obligation of any contract contained in the grant under which the former owner held, whether that grant was from the state or from a private person."

In the case of *Wilbur* v. *Tobey*, 16 Pick. (Mass.) 177, Mr. Chief Justice Shaw, in his usually clear and inimitable style, states the distinction which applies between alien and citizen decedents. In the course of the opinion it is said:

"Upon the decease of an alien, therefore, as he has no inheritable blood, he can have no legal heirs, and no one can hold or take the estate by descent. * * *"

It is then pointed out that, in view that an alien can have no heir, therefore, his estate escheats to the state without the formality of any proceedings in case the statute so provides. Further on in the opinion the Chief Justice said:

"But where a subject dies intestate, as the estate descends to collateral kindred indefinitely, the presumption of law is that he had heirs, and this presumption will be good against the commonwealth until they institute the regular proceedings by inquest of office, by which the fact whether the intestate did or did not die without heirs, can be ascertained and if this fact is established in favor of the commonwealth, it rebuts the contrary presumption, and the commonwealth, by force of the judgment, and of the statute before cited, become seised in law and in fact. In such case therefore, the court are of opinion, that an inquest of office is necessary, and that the commonwealth cannot be deemed to be seised, without such inquest. *Jackson* v. *Adams*, 7 Wendell, 367; *Doe* v. *Redfern*, 12 East, 96. So far as this depends upon general principles, it seems to be a rule highly reasonable in itself, and tends greatly to the security and regularity of titles."

While it is true that the Chief Justice does not place the necessity for a proceeding upon the ground of due process of law, he, however, clearly states that some proceeding is necessary to overcome the presumption of an heir and to divest such heir of his property. Such, in the very nature of things, must be the law in this jurisdiction if for no other reason than that in this state the title or right to the property vests in the heir at the death of the ancestor, subject only to the payment of the debts of the decedent and the necessary costs of administering the estate. How, then, is the state going to transfer the title from an heir to itself without some legal process or proceeding?

It should also be remembered that in this state an alien is not without inheritable blood. Comp. Laws Utah 1917, § 6427, reads:

"Aliens may take in all cases by succession as well as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative."

In view of the foregoing statute, it may well be that the presumption that a decedent left a surviving heir applies in

all cases, and that therefore some appropriate proceedings to judicially determine the fact that no heirs survive the decedent must be had.

In view of the provisions of our statutes and the decisions of the courts to which we have referred, we are forced to the conclusion that the state's contention that the money in question escheated to the state at any time or at all is untenable and cannot be sustained.

The Attorney General, however, further contends that the district court erred in its second conclusion of law wherein it held that the state "is not entitled to intervene" in the proceeding for the purpose of claiming the money in question as having escheated to the state. In that conclusion we think the court erred. No doubt the usual, and perhaps the more orderly, method of procedure would be for the state to appear in response to the usual statutory notice that the estate is about to be distributed and then present its claim to the court. The particular time when, or how, the state appears to present its claim is, however, not controlling. Indeed, it is not even very material. In view, however, that we have held that the state's claim is without right, and in view that the whole matter was presented to both the district court and this court, the district court's holding is of no importance.

In view of what has been said, it follows that the judgment should be, and it accordingly is, affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.