In re APOSTOLOPOULOS' ESTATE

No. 4253.   Decided October 20, 1926.   (250 P. 469; 253 P. 117.)

*Harvey H. Cluff,* Atty Gen., for the State.

*W. H. Reeder, Jr.,* of Ogden, for respondent.

FRICK, J.

This is an appeal by the state of Utah from a judgment of the district court of Weber county denying the state's claim to the residue of the estate of one Marienios Apostolopoulos, late of Weber county, deceased. The state's claim to the estate is based upon the constitutional and statutory provisions of this state, to which reference will hereinafter be made.

The facts disclosed by the record, and as stipulated by the parties to this proceeding, briefly stated are:

That Marienios Apostolopoulos, hereinafter called the deceased, died intestate in Weber county, Utah, on the 18th day of October, 1918, leaving an estate in said county; that application for the appointment of an administrator of said estate by a creditor of the deceased was duly made to the district court of Weber county as provided by the statutes of this state; that in said application it was alleged upon "information and belief" that the deceased left no relatives or heirs in this country, but that the "said deceased has relatives and heirs in Greece;" that the statutory notice of said application was duly published and, pursuant to such notice, upon a hearing had, one E. A. Larkin, a creditor of the deceased, was duly appointed administrator; that said Larkin duly qualified and acted as such administrator during all of the time covered by the proceedings here involved; that notice to creditors was duly published as provided by law, and all the claims filed against said estate were duly allowed and paid; that on October 15, 1919, the administrator filed his "final account" showing a balance remaining in his pos-

session amounting to $719.65; that notice of the administrator's application for final settlement and approval of his account was duly published, and thereafter, on the 28th day of November, 1919, an order was duly made and entered by said district court allowing and approving said "final account;" that although diligent inquiry had been made by said administrator during his administration he was, nevertheless, unable to obtain any information concerning any relatives or heirs of the deceased; that after the approval of said final account the estate remained in status quo until in the month of July, 1924, when the administrator received information by means of an affidavit dated January 23, 1924, sworn to by one Costoula Apostolopoulos, wherein she claimed to be the widow of the deceased, and that he left surviving him his said widow and five children, all residents of Greece; that afterwards, in May, 1924, one Theodore A. Bibicos, of Cleveland, Ohio, as the attorney in fact under a power of attorney executed by the widow and the children of said deceased, claimed the estate on their behalf; that said power of attorney, together with other evidence submitted by said widow and heirs, was duly filed in the district court of Weber county in said proceeding; that on the 7th day of November, 1924, the administrator of said estate filed a petition in said court praying for an order or judgment of distribution of the residue of said estate to the widow and children, naming them, as the heirs at law of said deceased; that notice of the application for distribution as aforesaid was duly published, and a time for the hearing thereof was duly fixed by said court; that before the day fixed for the hearing of said application the Attorney General on behalf of the state of Utah made application to said district court wherein he asked that the residue of said estate be distributed to the state of Utah for the benefit of the school fund of said state, for the reason that no claimant of said estate had appeared within the time provided by our statute within which a claimant must appear and claim succession, and for that reason the estate should be distributed to the

state of Utah for the benefit of the school fund. In the petition or application filed by the Attorney General he fully stated the facts upon which the state's claim was based.

A hearing upon the application of the state, the petition of the administrator for distribution, and the evidence submitted by the widow and heirs at law of the deceased why the residue of the estate should be distributed to them, was duly, had and, after such hearing, on the 16th day of January, 1925, the district court aforesaid entered its final decree disallowing the application of the state of Utah and ordered the residue of said estate distributed to the widow and children of said deceased in the manner provided by our statute and as claimed by them.

The district court, in its findings, merely recited the facts hereinbefore stated. It, however, also found "that no claimant appeared in the state of Utah until more than five years after the decedent's death * * * to claim succession to said estate or to the proceeds thereof."

Upon the foregoing facts the court made the following conclusion of law:

"That the wife and children of said deceased had no notice of the hearing upon the petition for letters of administration filed in this matter other than the notice published in the Ogden Examiner, a newspaper published in Ogden City, Weber county, Utah, and had no notice of any subsequent proceedings in the progress of the administration of said estate until the filing of the petition for authority to make additional expenditures and for distribution of the estate to the wife and children of said deceased, filed on November 7, 1924."

The court further found as a conclusion of law that the widow and children of the deceased were entitled to the residue of said estate, and entered judgment or decree to that effect, as before stated.

The state predicates error upon the final judgment or decree of distribution, and also insists that the district court exceeded its authority in distributing the residue of said estate to the widow and children of the deceased. In other

words, the Attorney General contends that, in view of the facts and the statutes of this state, the district court had no discretion in the matter, and that it was its duty to order the residue of said estate distributed to the state of Utah for the benefit of the school fund.

Our Constitution, art. 10, § 3, among other things, provides that the "proceeds of all property that may accrue to the state by escheat or forfeiture" shall be paid to the "state school fund." The various sections of our statutes which relate to the subject of escheat and the administration and disposition of estates where the heirs are unknown or where no one appears to claim succession are found in Comp. Laws Utah 1917, as sections 7779 to 7789 inclusive. The provisions of those sections are particularly referred to in the recent case entitled, In re French's Estate, 64 Utah, 66 228 P. 194, and it is not necessary to repeat them here. In addition to the several sections of the statute before referred to, to some of which further reference will herein be made, there are also other statutory provisions that have a bearing on this case to which I shall now refer.

Section 6408, subd. 9, provides that the property of all decedents who leave no heirs shall escheat to the state. Section 7785, on which the Attorney General particularly relies, so far as material here, provides:

"If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

Section 7785 has, however, been amended at various times. It was first passed in 1884. Laws Utah 1884, p. 77. It seems, as first enacted, it was copied from the statutes of California. As originally passed, after providing that all aliens could inherit, it, however, also provided that:

"No nonresident foreigner can take by succession unless he appears and claims succession within five years after the death of the decedent to whom he claims succession."

It will thus be seen that as originally enacted the 5-year limitation applied to such claimants only as were nonresident foreigners. The statute, in the form it was first enacted, was carried forward into the compilation of 1888. See 2 Comp. Laws Utah 1888, § 2758. The section was then amended and carried forward in the Revised Statutes of Utah 1898, as section 3974, where it is provided:

"If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state for the benefit of the state school fund."

It will be observed that the section as amended, and as it now reads, and as it has been in force at least since 1898, fixes a 5-year limitation upon all claimants, whether residents or nonresidents, citizen or foreigner; whereas, as originally enacted, the 5-year limitation applied only to nonresident foreigners. As before stated, the statute as originally passed was practically a copy of the California statute upon the subject. The question as to when a claim must be made in order to entitle a claimant to succession has on several occasions come before the Supreme Court of California. In *State v. Smith*, 70 Cal. 153, 12 P. 121, it was held that in order for an heir to succeed he must appear and claim succession within the 5-year period, and unless he does so appear within that period his rights to the property have ceased to exist. The holding is to the same effect in *People v. Roach*, 76 Cal. 294, 18 P. 407, where the Smith Case is followed. It was, however, also held in the latter case that any claim that the state might make to the property before the 5-year period has fully elapsed is premature and of no effect. In Re Estate of Pendergast, 143 Cal. 135, 76 P. 962, the two prior California cases just referred to are approved and followed. In the latter case, in referring to the time within which the claimant must appear and the legal effect of his failure to do so, it is said:

"* * * if he [the claimant] fails to appear and claims the same [the estate] within five years his right ceases, and the property then

vests in the state, but not strictly by escheat for want of heirs, but by virtue of the effect of the statute"—citing cases.

That is, the court in effect holds that where one dies without heirs, or where no claimant appears to claim succession within the period fixed in the statute, his estate necessarily escheats to the state by operation of law. In Estate of Miner, 143 Cal. 194, 76 P. 968, it is held that under the statute unless the estate is claimed "within five years from the time of succession,' the claim is barred and the claimant has lost his right to claim the estate.

Where, therefore, the decedent leaves heirs surviving him, but such heirs fail to claim the right to succession within the 5-year period fixed by the statute, their rights cease, and the estate escheats to the state by operation of law. In Idaho the statute reads the same as the California statute, and it was held by the Supreme Court of that state in *State v. Stevenson,* 6 Idaho, 367, 55 P. 886, that in view that no claimant had appeared to claim succession with the 5-year period fixed by the statute, no claim could successfully be made thereafter. It was further held that where no claimant appears within the 5-year period the estate or property vests in the state by operation of law without further legal proceedings.

The only other state, so far as I am aware, in which there was in force a statute similar to ours, is Indiana. The statute there provided that "if, after the expiration of two years from the final settlement of the estate no heirs appear to claim the surplus or any part thereof," * * * such estate or surplus shall be paid to the county treasurer, etc. 2 Rev. St. 1876, p. 545, § 143. In *Fuhrer v. State,* 55 Ind. 150, the court, in the course of the opinion, said:

"In this case, it is admitted that the final settlement of the estate of the appellant's intestate was made on the 12th day of July, 1867. Two years afterwards, or on the 12th day of July, 1869, the state's cause of action, or right to the money, accrued, under section 143, above cited. * * *"

It was accordingly held that in view that no heirs had appeared within the time fixed by the statute the courts had no alternative save to order the money paid as directed by the statute. In that case, as in this, the lower court had refused to follow the statute, and therefore the Supreme Court reversed the judgment and ordered the money paid in accordance with the direction of the statute.

In all of the cases, therefore, where statutes fixing a time limit within which succession must be claimed were in force, and where due administration of the estate was had, as in this action, and no claimant had appeared within the time limit fixed by the statute, the courts held that at the end of such period of time the money or property of the estate vested in the state by operation of law, and hence it was the duty of the courts to direct the money or property paid or distributed to the state. In this connection it should not be overlooked that the decisions of the courts relating to the subject of escheats are as diverse and conflicting as the statutes relating to that subject are variant. It will be found, however, that the statutes relating to the subject of escheats, roughly speaking, are divided into three classes: (1) Those that provide for the disposition of decedent's estates who die without heirs; (2) those that provide for the disposition of bank deposits or other property where the owners have departed from the town, city, or state wherein the property is located or the deposits were made, and where the whereabouts of such owners is unknown and it is not known or cannot be ascertained whether they are living or dead; and (3) those where, as in this case, the death of the owner is known and his death has been judicially established and the estate has in due course been administered upon, but no claimant has appeared to claim succession within the period of time fixed by the statute. The principal difficulty arises in those cases falling within the second class, and the principles of law applicable to that class are sometimes confused and considered as applying to the other classes. As a matter of course, there is but little conflict of authority re-

specting the distribution of property belonging to the first class. Nor is there a great deal with respect to the third class, within which falls the case at bar.

In view of the foregoing classification I have merely cited such cases as deal with estates coming within the third class. If the reader desires to pursue the subject of escheats further, however, the following cases, in addition to those I have cited, will be found very illuminating and instructive, to wit: *Christianson v. King County*, 239 U. S. 356, 36 S. Ct. 114, 60 L. Ed. 327; *Commonwealth v. Thomas, Adm'r*, 140 Ky. 789, 131 S. W. 797; *Johnson v. Spicer*, 107 N. Y. 185, 13 N. E. 753; *Mathews v. Savings, etc., Co.*, 184 P. 418; *In re Melrose Avenue*, 234 N. Y. 48, 136 N. E. 235, 23 A. L. R. 1233; *State v. First Nat. Bank*, 61 Or. 551, 123 P. 712, Ann. Cas 1914B, 153; *Cunnius v. Reading School Dist.*, 206 Pa. 469, 56 A. 16, 98 Am. St. Rep. 790. In the annotator's note to the case of In re Melrose Avenue, supra, which is a very instructive case, the rule followed by the courts in the more recent decisions is stated in the following language:

"Although the courts formerly held that, on the death of a citizen intestate and without heirs, title to his real property did not vest in the state until there had been an adjudication of escheat, most of the recent decisions are in accord with the reported case (*In re Melrose Ave.* [234 N. Y. 48, 136 N. E. 235], 23 A. L. R. 1233), in holding that immediately on his death the title vests in the state."

The rule in the foregoing excerpt is held to apply to all cases falling within the class to which the case at bar belongs, the only distinction being that where the decedent dies without heirs his estate vests in the state immediately upon his death, while in those cases where a time limit is fixed by statute within which the claimants must appear to claim the estate after the death of the decedent and such death has been established, as in the case at bar, the right or title to the estate or property vests in the state at the expiration of the time limit fixed by the statute.

That a state may impose such conditions as to it may seem proper upon the right of aliens to take property within the

jurisdiction of the state by will or by succession under the statute has been the settled law of this country ever since *Mager v. Grima*, 8 How. (U. S.) 490, 12 L. Ed. 1168, was decided by the Supreme Court of the United States. In that case it was made to appear that the state of Louisiana had imposed a tax upon all property claimed by aliens under a will or by virtue of the statute of succession. It was contended that the law violated rights guaranteed by the federal Constitution, Chief Justice Taney, in answer to the contention and in upholding the law, in the course of the opinion said:

"Now the law in question is nothing more than an exercise of the power which every state and sovereignty possesses, of regulating the manner and term upon which property, real or personal within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it. Every state or nation may unquestionably refuse to allow an alien to take either real or personal property, situated within its limits, either as heir or legatee, and may, if it thinks proper, direct that property so descending or bequeathed shall belong to the state. In many of the states of this Union at this day, real property devised to an alien is liable to escheat. And if a state may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy."

The decision in that case, and the decisions in other cases involving the same principle, are reviewed and approved in able opinion in *Magoun v. Illinois Trust & Sav. Bank*, 170 U. S. at pages 288 to 295, 18 S. Ct. 594, 42 L. Ed. 1037.

The state of Utah therefore had the absolute right to impose the condition that unless succession is claimed within the period of five years stated in the statute the property would escheat to the state. The district court, as appears from the conclusions of law to which reference has been made, however, held that notice by publication was insufficient, and counsel in opposing the state's contention vigorously insists that the judgment of the district court is right and should be affirmed upon the

hypothesis assumed by the district court; that is, that the widow and heirs of the deceased had not been served with due notice or process, and therefore if the state shall succeed in its contention it would obtain the property without due process of law. Only three cases are cited in support of the contention, namely, *State v. Bank,* 186 Cal. 419, 199 P. 791, *Hamilton v. Brown,* 161 U. S. 256, 16 S. Ct. 585, 40 L. Ed. 691, and *In re French's Estate,* 64 Utah 66, 228 P. 194. *State v. Bank,* supra, has no application here, since that was a bank deposit case and comes within the second class to which reference has been made and is based upon a special statute. In re French's Estate has no application for the reason that in that case it was not known whether the deceased was alive or dead until a short time before the estate was claimed by an heir of the deceased. It was held the 5-year period did not begin to run until the death of the deceased was known.

The case of *Hamilton v. Brown,* supra, does not only not support the contention, but a mere cursory reading of the opinion will disclose that it is directly to the contrary. Indeed, the Supreme Court of the United States has so often held that in proceedings in rem notice by publication constitutes due process of law that the question is no longer open for discussion. The latest case upon that question was decided by that court on May 11, 1925, namely, *North Laramie Land Co. v. Hoffman,* 268 U. S. 276, 45 S. Ct. 491, 69 L. Ed. 953. The proceeding in that case was a proceeding in condemnation in which a strip of the owner's land was condemned for a public road. No notice was served upon the owner of the land except the notice published in a local newspaper, and it was contended that, inasmuch as the owner resided in the county, notice by publication was insufficient. The Supreme Court of Wyoming, however, held that in view that the notice had been given as provided by statute it was sufficient, and the Supreme Court of the United States affirmed the judgment of the Wyoming Supreme Court. There was at least some basis for the contention of the owner of the land

in the Wyoming case, inasmuch as he was a resident of the county in which his land was located and that it was known that he lived there, that he was entitled to actual notice before his land was condemned. Where, however, as in the case at bar, the heir is unknown, there is no basis for such a contention whatever, and to attempt to enforce it would be to attempt the impossible. In this jurisdiction the question as to what constitutes due process of law in probate proceedings has, however, been settled beyond controversy both by our statute and by decisions of this court. The question was directly presented in *Barrette v. Whitney*, 36 Utah, 575, 106 P. 522, 37 L. R. A. (N. S.) 368. That case has been the declared law of this state for upwards of 16 years, and, so far as the writer is aware, has not been questioned. The doctrine applicable to probate proceedings is, however, so well stated by Mr. Justice Sanborn in *Wilson v. Hartford Ins. Co.*, 164 F. at page 819, 90 C. C. A. 595 (19 L. R. A. [N. S.] 553), that I take the liberty of repeating what is there said, although the excerpt is also quoted in *Barrette v. Whitney*, supra:

"A proceeding in a probate court to administer upon the estate of a deceased person is a proceeding in rem, not in personam. The property within the jurisdiction of the court is the defendant, the executor or administrator is its representative, and all claiming any interest in that property under the deceased are parties to the proceeding."

The probate proceedings in the case at bar were regular in every particular. Not only was the jurisdictional notice as defined in *Barrette v. Whitney* given, but all other notices provided for by statute were duly published. All this is disclosed by the record of the proceedings before us, but in addition to all that the widow and heirs appeared in court by their attorney in fact and claimed the estate. Is it not an anomaly to contend that although one comes into court to claim the very matter in controversy— in this case the residue of the estate—that he, nevertheless,

has not had sufficient notice and that his property is being taken without due process of law? What possible effect could any additional notice have had so far as the widow and heirs are concerned? If authority is needed upon a proposition so clear, however, it is found in Re Malone's Estate, 21 S. C. 435, at page 453, where it is expressly held that where, as in this case, the parties come into court and claim the estate all other notices are immaterial. The record in this case shows, however, that notice that the residue of the estate would be distributed upon the administrator's application was duly published. Upon such notice having been duly published the state appeared in the case and made application in writing to the court that the residue of the estate be ordered distributed as provided by our statute in case no claimant appears to claim succession within the 5-year period after the death of the decedent. All the necessary facts were set forth in the state's application. The state, as is pointed out in some of the cases to which I have referred, appeared as the ultimate heir, or, at least, as claimant of the property as successor under the law. The district court was thus called upon to order the residue remaining to be distributed.

Comp. Laws Utah, 1917, § 7764, so far as material here, provides:

"Upon the final settlement of the accounts of the executor or administrator, * * * upon the petition of the executor or administrator or of any heir, legatee, or devisee, and upon notice, the court must proceed to distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto. * * *"

Under a similar statute in force in the state of Washington the probate court distributed the estate to King county as provided by the statute in case of escheats. Some of the heirs, some years after the distribution had been made, appeared, and claimed the property. The case finally reached the Supreme Court of the United States. *Christenson v. King*

*County*, 239 U. S. 356, 36 S. Ct. 114, 60 L. Ed. 327. It appeared in that case, as it does here, that in due course of the probate proceedings in the Washington probate court the point had been reached where the court was called upon to order that distribution be made to King county.· In the case coming to the United States Supreme Court it was contended that distribution should not have been made to King county, etc. In view, however, that the probate proceedings in the Washington court had proceeded to the point where distribution under the statute was called for, the Supreme Court of the United, in the case just referred to, said:

"It does not seem to be disputed, that under this act, if proceedings in a probate court were properly initiated, that court would have jurisdiction to enter a decree determining the interests of heirs and distributing the real estate to those of the kindred, if any, who were found to be entitled to take as provided in this section."

Now, in the case at bar it is contended that the court, upon the application of the administrator, did not have the power to determine who was entitled to the residue of the estate. Indeed, it is contended that the court was required to determine that the widow and the children were entitled to the estate. Our statute, however, provides that the court shall determine "who by law are entitled" to the estate. The Supreme Court of the United States, under a similar statute, held that if the court had jurisdiction to make distribution to the heirs, if there were any that were entitled to the estate, it also had the power to determine who, if some one else, was entitled to the estate. In the case at bar, therefore, the proceedings being regular in every particular, the district court, upon the notice of the administrator that distribution should be made, was required to order distribution to be made according to law. The law in explicit terms provides that unless a claimant appeared to claim the estate within five years after the death of the decedent, the proprety must be distributed to the state for the benefit of the state school fund. As held by the Supreme Court of Indiana

in *Fuhrer v. State.* supra, the court was therefore bound to order the estate distributed to the state of Utah for the benefit of the state school fund. The court had no discretion in the matter, and this court has none.

It is certainly within the legislative power to fix some reasonable time within which succession must be claimed, and, further, to determine what shall become of unclaimed estates or property and the conditions upon which it shall pass to the sovereign state. In this case the time within which succession had to be claimed had fully elapsed before any claim was made, and hence, under the decisions to which I have hereinbefore referred, which are based on statutes in which a limit of time was fixed within which a claimant was required to appear, there is but one conclusion permissible, and that is that the district court clearly committed fatal error in distributing the property in direct conflict with the provisions of our statute. The district court entirely overlooked both the power of the state and the manifest intent of our statute. The state has plenary power to impose any condition upon an alien's right to take property within the jurisdiction of the state by succession that it sees fit to impose. It therefore imposed the condition that succession must be claimed within five years if claimed at all. The right to take by succession, therefore, is not an absolute but a qualified or conditional right. If no claim is made within the 5-year period the right terminates. No action in court is necessary to determine the right, but it terminates automatically by the lapse of time. All that is required in such cases is to judicially establish the time of the death of the owner of the property. When that event is judicially established the time fixed in the statute automatically begins to run, and the only further fact that is required to be judicially determined is that succession was not claimed within the 5-year period which is set in motion by the death of the owner of the property.

In this connection it may not be improper to state that if our statute is deemed to be unjust the matter should be

brought to the attention of the Legislature, which alone has the power to change it. Viewing it from a practical standpoint, however, the writer can discover no serious objection to the statute. It has now been in force in its present form for more than a quarter of a century, and, so far as appears from the judicial records of the state, this is the first case where a claimant has failed to appear within the time fixed by the statute. This is not surprising in view of the modern methods of communication and the dissemination of knowledge respecting the whereabouts of individuals and their standing in the communities where they live.

In view of what has been said, it follows that the judgment of the district court of Weber county should be and it accordingly is reversed, and the cause is remanded to that court, with directions to set aside its conclusions of law and to substitute others therefor in conformity with the views herein expressed, and to enter an order directing the residue of the estate to be distributed to the state of Utah for the benefit of the state school fund as provided by our statute.

Costs of this appeal will be paid out of the funds of the estate.

THURMAN and CHERRY, JJ., concur.

GIDEON, C. J. (dissenting).

I am unable to agree with the conclusions reached by Mr. Justice FRICK in the court's opinion in this matter, and shall state, as briefly as I can, my reasons for not agreeing.

We are not here dealing with an estate in which there are no heirs, such as the court was considering in Re Melrose Avenue, reported in 234 N. Y. 48, 136 N. E. 235, 23 A. L. R. 1233. The court there held in the absence of heirs that the title vested in the state immediately upon the death of the intestate. It is stipulated in this case that the deceased left heirs. By the provisions of Comp Laws Utah 1917, § 6405, upon the death of the intestate the title to the property in controversy immediately vested in the heirs subject only

to the control of the probate court and the possession by the administrator appointed by the court. Such has been the recognized law in this state since the decision in *Snyder v. Murdock,* 20 Utah, 407, 59 P. 88, and, as I understand, is not controverted by the Attorney General. The statute relied upon by the state does not, in my judgment, work an escheat or forfeiture of the estate to the state, and that is true whether it is interpreted independently of other provisions of the Code or when construed in connection with the other provisions of the Code relating to succession. The language of the statute is:

"7785. * * * If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

The foregoing quotation is the concluding sentence of said section 7785. The section is part of the Probate Code, and is also a section of a chapter entitled, "Distribution and Partition." This particular section, and the six immediately preceding sections, relate to nonresident decedents and absent heirs. It is provided in those sections that upon the assignment or distribution by a judgment or decree of court to an heir residing out of and having no agent within the state, the court shall appoint an agent to take charge of such estate. The agent is required to execute a bond for the faithful management of and accounting of the estate. The agent is required to make annual reports showing the condition of the estate. Section 7784, the section immediately preceding the one from which the above quotation is taken, provides that at any time the court may direct a sale of all or a part of the property, and that the proceeds of such sale, after deducting expenses, etc., must be paid into the state treasury and receipts be taken therefor. Section 7785, supra, provides a method by which the state treasurer is required to pay the money so deposited when any person appears and satisfies the court that he is entitled thereto. Those provisions are

followed by the sentence relied upon for the property having escheated to the state. It will be observed that section 7785 and the preceding sections are dealing with the property the title to which, by the terms of the statute, has already vested in the heir. The two succeeding sections, 7786 and 7787, parts of the same chapter, deal with estates of intestates leaving no heirs. Section 7786 provides for the appointment of a special administrator by the court to take charge of the property of such estate. Such administrator shall give bond for the faithful performance of the trust, and shall render to the court annually a detailed account of the condition of the estate. In section 7787 it is provided:

"At the expiration of two years after such appointment, if no claimant shall have appeared and established his right to the estate, the same shall be deemed to have escheated to the state, and the court shall direct a sale of all of the property, and shall cause the proceeds thereof, after the payment of debts and expenses, and taxes, to be paid into the state treasury for the benefit of the state school fund."

These two sections are dealing with property the title to which has never vested in heirs for the reason that no heirs exist.

The language of section 7787 furnishes some grounds for claiming that the Legislature by that section intended that an estate where there are no heirs and where no heirs appear within two years after the appointment of the special administrator by operation of the statute had escheated to the state. The language there found is, "shall be deemed to have escheated." The word "deemed" has been construed to mean "adjudged, presumed," and "shall be deemed" is construed to import the same as "shall mean." Words and Phrases, Second Series, p. 1262. The language of section 7785 is not "shall be deemed to have escheated," but "shall escheat." If the intent of the Legislature had been the same in both sections doubtless the compilers would have used the same language in both, or other unmistakable language expressing a like intent. The language of section 7787 denotes a

past or present escheat. The language of section 7785 denotes an escheat to take place in the future—that is, an escheat to be determined by judicial decree to be obtained as a result of an action to be instituted by the Attorney General.

Section 5738 of the same compilation under the chapter designated, "Attorney General," and which chapter undertakes to define the duties of the Attorney General, provides:

"It is the duty of the Attorney General to institute investigations for the recovery of all real or personal property which may have escheated or should escheat to the state, and for that purpose he has the power to cite any and all persons before any of the district courts of this state to answer inquiries and render accounts concerning the said property, real or personal, and to examine all books and papers of any and all corporations. When any real or personal property is discovered which should escheat to the state, the Attorney General must institute suit in the district court of the county where said property shall be situated for the recovery, to escheat the same to the state."

It seems clear from the language of that statute that any property not already forfeited by express language of the statute is not escheated until the Attorney General has instituted an action in the district court of the county in which the property is situated and obtained a judgment decreeing the property to the state, or, in other words, decreeing an escheat. It is true, as stated by Mr. Justice FRICK, our Probate Code was taken largely from the California Code. The language of the statute as originally enacted by the Utah Legislature in 1884 is:

"No nonresident foreigner can take by succession unless he appear and claim succession within five years after the death of the decedent to whom he claims succession."

The right of succession granted by that language to a nonresident foreigner was a conditional one, the condition being that the nonresident foreigner claim within five years. In other words, the right of succession to such nonresident for-

eigner did not exist or come into being until such foreigner claimed the estate. Under our present statute a nonresident alien heir, as well as a resident heir, takes the property of an intestate deceased absolutely and instantly upon the death of an intestate. The fact that our Legislature in amending the act from time to time since its original enactment has deemed it wise to omit from the statute the provisions making the right of inheritance conditional is at least argumentative that that limitation is not now the policy of this state.

The provisions of the California statute considered by the court in *State v. Smith*, 70 Cal. 153, 12 P. 121, are not the same as the section of our Code quoted above. The court in that case was considering the claim of a nonresident alien heir and the section of the Code thereto applicable. The language of the California statute, quoting from the decision, at page 156 (12 P. 123), is:

"If a nonresident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred. The property in such case is disposed of as provided in title 8, pt. 3, of the Code of Civil Procedure."

Title 8, referred to in that section, is substantially the same as section 5738 of our Code. In *State v. Smith*, supra, the court, in construing that section, says:

"The failure of a nonresident alien to 'appear and claim' within five years after descent cast operates a bar of his right to assert any title in the property as against the state. And this not on the idea that the property has escheated to the state, as of the date of the death of the ancestor, but because by the law the 'nonresident' takes subject to the loss of his right by a failure to make claim within the five years."

In other words, the court there was giving effect to the limitations fixed by the statute on the time after which a nonresident alien would be barred. Not that the property had actually escheated to the state, but that by the terms of the statute the heir's right to appear and claim it was

cut off and defeated. Our statute does not state that the heir is barred to claim the property, but simply provides that it shall escheat. Section 5738, supra, clearly, in my judgment, determines the means by which the escheat shall take place. Until such action has been taken by the Attorney General and a judgment of the court obtained escheating the property it is still the property of the heir or heirs, and at any time a claim is made by such heir or heirs before a judgment of escheat has been rendered it is clearly the duty of the court to distribute the property to the rightful heirs. See *State ex rel. Atty. Gen. v. World, etc., Co.*, 40 Wash. 104, 89 P. 471.

The first headnote to *Wilbur v. Tobey*, 16 Pick. (Mass.) 177, is:

"The commonwealth does not become seized of the real estate of a citizen dying intestate and without heirs, until the rendition of judgment in its favor upon an inquest of office; for until then the presumption of law is that he had heirs. It cannot therefore convey such estate, before such a judgment has been rendered."

The statute the court was considering in that case is:

"Where there shall be no kindred, the same shall escheat to the commonwealth for want of heirs."

The opinion of the Supreme Court of California in *Estate of Miner*, 143 Cal. 194, 76 P. 968, as I understand that opinion, lends support to the contention that our statute does not, by failure of heirs to appear within five years, in and of itself, amount to or constitute an escheat to the state. The first headnote to that opinion, which reflects the opinion of the court, is as follows:

"The deposit in the state treasury, by order of the court, of money comprising the residue of the estate of a deceased person administered by the public administrator, and for the distribution of which no heirs have appeared, does not of itself work an escheat to the state, nor constitute a decree of distribution to the state. The state does not come in by way of succession; and an action of escheat is necessary to vest title in the state, whether the property is real or personal."

The statute relied upon by the Attorney General in this case clearly, in my opinion, does not work an escheat of the property to the state. If it does anything it defeats the heir's right to claim the estate. The statute does not seem to require that construction. It nowhere says his right to claim the estate is barred or that he is cut off from the right to make claim to the property. It simply says it shall escheat. Escheats not being favored in the law, and the title being by operation of the statute vested in the heir, until some proceeding is taken as provided by the Code and a decree of court obtained adjudging an escheat, it would and must logically follow that when a rightful heir does appear and claims the estate before the escheat is decreed, the probate court must of necessity decree the property to such heir.

If I understand the majority opinion in this case, it is to the effect that if at the end of five years after the death of the deceased no claimant of the estate has appeared, the title to the property thereof by operation of law vests in the state. It must necessarily follow from that, even if the district court had made an order adjudging this property to the heirs, the state could at any time thereafter have instituted action against the heirs receiving the property to recover it. No court, so far as I have been able to ascertain, has ever gone to that extent.

The opinion cited from the Indiana Supreme Court, *Fuhrer, Adm'r, v. State, etc.,* 55 Ind. 153, is not authority for holding that the estate in this case has escheated. The court was not there considering whether property had escheated to the state. Section 143 of the Code of that state at that time provided that after the expiration of two years from the final settlement of the estate, if no heir had appeared, the court should direct the proceeds of the estate to be paid to the county treasurer to be by that officer paid over to the state treasurer. The facts in that case seem to have been that an administrator had been appointed, final settlement of the estate made, no heir appeared for a period of more than two years, and the administrator refused to pay the

money over to the county treasurer. Suit was then instituted by the Attorney General to compel the administrator to pay the money to the county treasurer. The provisions of the statute were plain, and the court enforced the judgment against the administrator compelling him to pay money in his hands belonging to the estate to the county treasurer. The case does not discuss the question of escheat or forfeiture of the estate.

The section of the statute considered by the Supreme Court of Idaho in *State v. Stevenson,* 6 Idaho, 367, 55 P. 886, relates to alien heirs. The section, as quoted in the opinion, is:

"* * * Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative; but no nonresident foreigner can take by succession, unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

The court held in that case that a nonresident foreigner cannot take by succession unless he appears and claims succession within five years after the death of the decedant. We have no such statute as the Idaho court was considering in that case.

The facts are stipulated. It appears conclusively from the stipulation that before the state had taken any action to escheat this estate the rightful heirs appeared and claimed by succession. The court, in my judgment, was right in decreeing the property to them. I am of the opinion the judgment should be affirmed.

STRAUP, J. (dissenting).

It is with some hestitancy that I, too, dissent. The question is not free from doubt. As stated in the prevailing opinion, statutes and decisions on the subject are variant. As I view the matter, the determination of it depends upon the interpretation of the statute and its application to the

facts of the case. Seemingly the question largely hinges on the effect to be given the last sentence of section 7785, set forth in the prevailing opinion, which reads:

"If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

Looking at the sentence by itself, it would appear, as contended by the Attorney General, that it applies alike to all heirs and claimants, whether citizens or aliens, residents or nonresidents. In other words, it is contended by the Attorney General, and as I understand maintained by the prevailing opinion, that all claimants and heirs, citizens and aliens, residents and nonresidents, to be entitled to succession are required to appear and claim succession or some right or interest in and to the estate within five years after the death of the deceased, and unless they do so they are barred of all right to succession. I think such is not the proper interpretation of the statute. To properly understand and ascertain the meaning of the sentence referred to I think it must be considered in connection with what precedes it. The section in which the sentence is found is a part of a subhead, entitled "Absent Heirs and Escheats," and a part of chapter 12 of the Probate Code, entitled, "Distribution and Partition." The first part of the chapter deals with subheads entitled, "Partial Distribution," and "Final Distribution and Partition," in general. Then comes the subhead, "Absent Heirs and Escheats." The first section under this subhead deals with a nonresident decedent leaving a will and property within the state. We are not concerned with that, for here the decedent left no will and at his death was a resident of Ogden City, Utah, where he died. The next section also deals with a nonresident decedent, forbidding the transmission of property of the deceased in the state to a foreign executor or administrator until citizen creditors of the estate are paid. We are not concerned with that section. Then comes section

7781, which relates to the appointment of an agent for absent heirs. It provides:

"When any estate is assigned or distributed by a judgment or decree of the court to any person residing out of and having no agent in this state, and it is necessary that some person should be authorized to take possession and charge of the same for the benefit of such absent person, the court may appoint an agent for that purpose, and authorize him to take charge of such estate, as well as to act for such absent person in the distribution; provided, that if such estate is in money when so assigned or distributed, the executor or administrator of such estate may deposit the share of such person, in his name as far as known, with the state treasurer, who shall give duplicate receipts for the same, one of which must be filed with the state auditor and the other with the county clerk, * * * conditioned that he shall faithfully manage and account for the estate. The court appointing such agent may allow a reasonable sum out of the proceeds of the estate for his services and expenses. Such agent may sue and be sued as such."

Several sections follow that which relate to the giving of a bond by, and compensation expenses, and annual reports of, the agent. Following that is section 7784, which is as follows:

"The court may at any time direct the sale of all or part of the real or personal property, and such sale shall be conducted and report made to the court in the same manner as is hereinbefore provided for the sale of property of decedents. The proceeds of such sale, after deducting the expenses thereof, must be paid into the state treasury, and receipts taken and filed therefor as hereinbefore provided."

Immediately following this is section 7785, which contains the sentence giving us the trouble. The whole of the section is as follows:

"When any person appears and claims the money paid into the treasury, the court making the distribution must inquire into such claim, and, being first satisfied of his right thereto, must grant him a certificate to that effect, under its seal; and, upon presentation of the certificate to him, the county clerk must draw his requisition on the state auditor for the amount, and, upon presentation to him of such requisition, the state auditor shall draw his warrant on the state

treasurer in the sum called for in said requisition. If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state, for the benefit of the state school fund."

Now, when the whole of that section is read and considered in connection with the sections preceding it and to which it relates, it seems to me that the last sentence of that section relates to an absent heir or person residing out of the state to whom an estate *has been assigned or distributed* by decree of distribution and an agent appointed to take charge of such estate, and the property, under orders of the court, sold and the proceeds of sale paid "into the state treasury." It is under such circumstances, as I think, that if no claimant appears within five years after the death of the deceased to claim succession, the property, or the proceeds thereof, shall escheat to the state. In other words the phrase, "if no claimant appears," found in the last sentence of section 7785, refers, as I think, to what precedes that sentence not only in the same section but also in the preceding sections of which section 7785, and the whole thereof, is a part and related to the same subject. Section 7784, providing that "the court may at any time direct the sale of all or part of the real or personal property," undoubtedly refers to the estate assigned or distributed to a person residing out of having no agent in the state. Such view is strengthened by the further language of section 7784, that "such sale shall be conducted and report made to the court in the same manner as hereinbefore provided for the sale of property of decedents," and by the language that the proceeds of such sale shall be, not deposited "with the state treasurer," but "paid into the state treasury." Section 7785 provides what disposition may be made of such property or of the proceeds when the same is sold after the property has been assigned or distributed to a person residing out of and having no agent in the state. Such section provides that when any person appears and claims "the

money paid into the [state] treasury," which of course refers to the money paid in from the proceeds of sale of property mentioned in section 7784, property not of the decedent but assigned or distributed to a person residing out of and having no agent in the state, "the court making the distribution must inquire into such claim, and, being first satisfied of his right thereto," is required to grant the claimant a certificate to such effect, which, upon presentation to him, the county clerk must draw his requisition on the state auditor for the amount and the auditor required to draw his warrant on the state treasurer.

Then comes the last sentence of the same section, that, "If no claimant" appears within five years, etc., the property or the proceeds thereof shall escheat to the state, which, I think, necessarily refers to a claimant repecting the matters and things preceding such last sentence. Certain it is that the last sentence of section 7785 is a part of the whole of that section, and that the section itself is a part of and related to the preceding sections. I cannot escape that conclusion. When I so consider the matter, I am unable to reach the conclusion that the words, "the property or the proceeds thereof shall escheat to the state," found in the last sentence of section 7785, refer to the property of the decedent. As it seems to me, to reach any other conclusion, and one that such words do refer to the property of the decedent, and that the word "claimant" so found in the last sentence of section 7785 refers to and includes alike all claimants and heirs, citizens, aliens, residents, and nonresidents, who, if they do not within five years after the death of the decedent appear and claim succession, are barred of all rights thereto and that the property by operation of law escheats to the state, necessitates a disassociation of such last sentence from all that precedes it and a consideration of it as being related to a wholly different and independent subject, a limitation, within which an heir, citizen, or alien, resident or nonresident, entitled to claim succession, must appear and claim and demand it. Unless so disassociated, it is difficult to

understand that the Legislature by such last sentence dealt or intended to deal with any such a subject. The conclusions reached by me are, as I think, to some extent, supported by or at least are in harmony with sections 7786 and 7787 following section 7785. They provide that when any person has died *intestate and without heirs,* leaving property in the state, it shall be the duty of the court upon notice of such fact to appoint a special administrator to take charge of the property, and if no claimant shall appear and establish his right to the estate at the expiration of two years after such appointment, the estate shall be deemed to have escheated to the state, and the court shall direct the sale of all the property and cause the proceeds thereof, after payment of debts, expenses, and taxes, to be "paid into the state treasury" for the benefit of the school fund. No proceedings were had or invoked under either of these sections. The decedent did not die without heirs. In the petition for the appointment of an administrator it is alleged, and as stated in the prevailing opinion, that the deceased left "relatives and heirs in Greece." Neither the names nor addresses of the heirs were stated. Presumably the petitioner did not know their names nor addresses. But it is conceded that the deceased left in Greece, surviving him, a wife and five children, four of whom were minors when the deceased died, the youngest child then being only about six years of age, and three of whom were still minors when the decree of distribution herein complained of was made. The court found that the administrator made diligent inquiry to ascertain the names of the heirs, but was unable to do so until May, 1924, which was more than five years after the death of the deceased; and in July, 1924, he received the affidavit of the widow and other authentic documents executed in January, 1924, showing the residence and marriage of the wife and the names, residences, and ages of the children. That the wife and children were aliens matters not. Under our statute aliens and nonresidents have the same right of inheritance and to succession as a citizen and resident. Comp.

Laws Utah 1917, § 6427. Unlike the California statute, no limitation is here placed on an alien nonresident any more than upon a citizen and resident heir.

We thus have a case where the deceased, a resident of Utah, died in Utah leaving property in Utah and leaving a wife and one child of age and four minor children residing in Greece. That such heirs were the sole heirs and entitled to inherit just as though they were citizens and residents of Utah is conceded. In Re French's Estate, 64 Utah, 66, 228 P. 198, it was held by this court that the title or right to the property of the decedent at his death vested in his heirs, subject, of course, to the payment of debts, taxes, and costs of administration. That, too, is our statute. Chronologically we have this: The deceased, a resident of Utah, died in Ogden City October 18, 1918. June 9, 1919, a petition was filed for the appointment of an administrator. Notice of such hearing was published in an Ogden City newspaper June 12th, 20th, and 21st, 1919, and posted June 11, 1919, in three public places in Ogden City and a copy mailed to the petitioner, one to his attorney, and one to the person, a resident of Ogden City, named in the petition to be and who was appointed administrator. No copies were mailed to the heirs, presumably because their names and addresses, other than that they were in Greece, were then unknown to the petitioner. Let it be conceded that the publication and posting of notices was sufficient to confer jurisdiction upon the court to appoint an administrator and to administer the estate. But whether the court on such a notice may also adjudicate and order an escheat as against admitted and conceded heirs presents a different question, for this court in the French Estate, supra, said that the heir, if there be one, cannot be divested of his property without some proper notice followed by some proceeding in which the right of escheat is judicially determined, and that some such proceeding was necessary to overcome the presumption of an heir and to divest him of his property, and, said the

court, that such, in the very nature of things, must be the law in this jurisdiction if for no other reason than that in this state the title or right to the property vested in the heir at the death of the ancestor. July 23, 1919, the administrator was appointed. The whole of the estate consisted of $1,310.40 on deposit in an Ogden City Bank. Between August 5 and September 2, 1919, notice to creditors was published. Claims for funeral expenses and medical attendance amounting to $325 were presented, and on October 16, 1919, were allowed and paid. On October 15, 1919, the administrator filed his final account, showing a balance on hand of $719.65 after paying all claims, attorney's, and administrator's fees and other expenses of administration, and on November 28, 1919, the account was approved. No further proceedings were had in the estate until November 7, 1924, when the administrator filed a petition, among other things showing the settlement of the estate, the names, ages, and residence of the wife and children, and that they were the sole heirs at law of the deceased, and praying that the balance of the estate, less additional attorney's and administrator's fees, be distributed to them. Here the state, through the Attorney General, for the first time appeared in the cause. On behalf of the state the Attorney General, December 5, 1924, filed an answer to the petition for distribution, alleging that no claimant had appeared within five years after the death of the deceased to claim succession and that no claim was filed with the administrator claiming succession until July, 1924, and then alleged "that the proceeds of said estate had therefore escheated to the state," and protested a distribution of the estate to the heirs (whom he as such did not dispute), and prayed that all of the property—the moneys—in the hands of the administrator, after payment of expenses of administration, "be ordered and declared to have escheated to the state for the benefit of the state school fund." The court, on January 16, 1925, distributed the property to the heirs, and from such decree of distribution the state, on January

22, 1925, prosecuted this appeal on the alleged ground that neither the widow nor the children, admitted to be the sole surviving heirs of the deceased, made or filed within five years after the death of the deceased any claim in the cause, or to or with the administrator, claiming succession or any interest in the estate, and that therefore the property in the hands of the administrator, by operation of law, without judicial aid or action, escheated to the state and hence the court was required, not now or at any time to determine or adjudicate an escheat, but to order and declare that the property ipso jure, and without judicial aid or action, had escheated.

I have thus in some detail set forth the proceedings to show the administration of the estate to be in the ordinary and due course. It has always been my understanding, and I think it has been the practice, that an admitted heir, though an adult much less a minor, named or unnamed on the record, to entitle him as such to succession, was not required to make or file a claim in the cause or to or with the administrator or otherwise to come forward and make some sort of formal claim or demand, and that if he did not do so within five years after the death of the deceased his right to succession or his interest in and to the property of the estate ceased and was barred. It has rather been my understanding that an administrator, as here, regularly and duly, on notice appointed by a court of competent jurisdiction, represented the legal heirs and was their legal representative, and that he, under orders and direction of the court, took charge of the assets and property of the estate and administered it for the use and benefit of the heirs and creditors. What he so did within the powers and duties of his office the heirs did. To be before the court no personal appearance of an heir was requisite. He already was before the court by and through the administrator as his legal representative. That was in effect held in *Barrette v. Whitney*, 36 Utah 575, 106 P. 522, 37 L. R. A. (N. S.) 368, and in *Wilson v. Hartford Ins. Co.*, 164 F. 819, 90 C. C. A.

593, 19 L. R. A. (N. S.) 553, quoted and approved by this court in *Barrette v. Whitney.*

What here therefore was requisite for these heirs to do? In the petition for letters of administration it was represented that there were heirs in Greece. Assuming that because of the published and posted notice the heirs and the whole world were bound to know the contents of the petition, still not anything therein stated was hostile or adverse to them. The appointment of the administrator being regular, no just cause lay for a protest in such particular. Notice to creditors was given, claims duly presented, allowed, and paid, and again no cause existed for protest. So, too, with the presentation and allowance of the final account of the administrator. When the petition for distribution was filed the names, ages, and residence of the heirs were therein stated and the property in the hands of the administrator asked to be distributed to them. Surely the heirs had no complaint as to that. Thus wherein was any formal or other appearance of the heirs requisite? Whether they had actual knowledge or not of the administration or of the proceedings had in the course of it, they nevertheless legally were required to acquiesce therein in the absence of some protest or objection based on want of jurisdiction or on fatal irregularities, neither of which are claimed. The principle contended for by the Attorney General leads to this: If, as here, a resident of the state dies leaving heirs surviving him and leaving property in the state, and within a year thereafter an administrator is appointed to take charge of the decedent's property and to administer the estate and he does so, but no petition for distribution is filed within five years after the death of the deceased, and no personal appearance of the heirs made in the cause and no claim or demand otherwise made by them of succession within five years after the death of the deceased, the estate ipso jure escheats to the state. I do not believe the statute means that or that it applies to such a situation. To hold that it does render much property in the state subject to escheat,

for there are many instances where petitions for distribution were not filed and distributions not made within five years after the death of the deceased, and some even where petitions for administration were not filed within such period and no claimant so far as any probate or other proceedings appeared claiming a right to succession. Should it be said that the 5-year period does not begin to run until a judicial determination of the death of the deceased, the appointment of an administrator, then why say that? The statute makes no such or any exception. However, should such be the proper construction of the statute, then, on the theory that some sort of claim or demand was requisite within such period, the demand or claim here was timely, for that in May, 1924, and within four years and about ten months after the appointment of the administrator, a demand and claim was made on the administrator by Bibicos, the attorney in fact of the widow and children, but which was not made within five years after the death of the deceased.

But, as I view the case, it is one where a person, a resident of Utah, dies leaving property—money—in the state, and leaving heirs residing out of the state, and, such facts being admitted, it was the duty of the court by its judgment or decree to distribute to them such moneys remaining in the hands of the administration; and when so distributed, and if there be no agent or person in the state authorized to receive the money, the administrator, as provided by section 7781, "may deposit the share" of such distributee or distributees, "in his name [or their names] as far as known, with the state treasurer," and as by that section provided. Whether there was an agent in the state authorized to receive the money is not made to appear. The case had not proceeded that far. The distribution was just made when this appeal was taken. The money was not deposited "with the state treasurer," much less paid "into the state treasury." It still is in the hands of the administrator. Until moneys are "paid into the state treasury" as provided

by section 7784 and 7785, and not merely deposited "with the state treasurer" as provided by section 7781, the state has no concern, except in estates of intestates without heirs. It is to be observed that where the property to be distributed is money and is distributed to an heir or person residing without the state and there be no agent in the state to receive it, the administrator is not required to deposit the distributed share or shares with the state treasurer. The statute merely provides that he may do so. That is for his protection. He nevertheless, if he feels warranted in so doing, may pay it over to the absent distributee if he knows his address and is satisfied as to the identity of the rightful distributee. In case of minors, as some of the heirs and distributees here are, the administrator before paying the money over to them may cause to be appointed or may require the appointment of a guardian for such minors, or he may hold the money and notify the absent heirs or distributees to designate and authorize some one to receive the money, and upon such designation and authorization may pay the money over. Even where the distributed share of the absent and nonresident distributee is realty, and though he may not have an agent in the state to receive and take charge of it, still it does not necessarily follow that an agent must be appointed by the court to take charge of it. The absent and nonresident distributee may himself appoint an agent to do so, to whom, if duly authorized, the administrator may turn the property over and take effective clearances. I do not see how there may be an escheat of property while it is in the custody of the court and of its duly appointed administrator, except where there are no heirs, or where there are heirs until distribution to them and a failure on their part to take it. Until distribution, either partial or final, the heirs, resident or nonresident, have no right of possession, and so long as the property is and remains in the possession of the administrator and is in the process of administration his custody and possession is that of the heirs whose legal representative he is until

the property is distributed to them and his legal duties and obligations to them discharged.

Further, I do not regard the statutes here involved as escheat statutes. They are statutes of distribution and partition, wherein are stated conditions and circumstances under which estates escheat to the state. But I do not regard the statute in such particular as self-operating or self-executing as is contended by the Attorney General, except where there are no heirs of an intestate, in which case title to the property vests in the state on the death of the intestate. But where the intestate leaves heirs the title vests in the heirs. The facts and circumstances of a given case, disputed or not, may of course entitle the state to an escheat in cases where there are heirs, but they are not self-operating or self-executing. We have a statute which declares circumstances and conditions under which one may acquire or has acquired title to realty by adverse possession. In a given case the facts showing such title may not be disputed. Still, neither the statute nor the facts in such respect, though undisputed, are self-operating or self-executing, and to ascertain and adjudge the title requires some proper action presenting issues for determination and adjudication. So here. But that the state did not do. By its answer it did not seek or invoke judicial action to hear and try an issue whether the state was or was not entitled to an escheat, and, if so, to make an adjudication in such respect. All it did by its answer was to ask that the court declare and order that the property had escheated. To show that such contention is untenable I need but again refer to what this court said in French's Estate, supra, to the effect that the property of the decedent at his death vested in his heirs and that some proceeding was necessary to overcome the presumption of an heir and to divest him of his property; and this court there said, "How, then, is the state going to transfer the title from an heir to itself without some legal process or proceeding?" It may be conceded that in case of an intestate without heirs, where title to the property vests

in the state at the death of the intestate, no adjudication of an escheat is necessary to vest title in the state; but under and because of our statute I do not think that is true where the intestate, as here, admittedly leaves heirs. And here should be noted the views expressed by the Chief Justice, in which I fully concur, pointing out the difference between our statute and those of California, Idaho, and others of similar import in that particular, that under our statute title to property of an intestate at his death immediately vests in his heirs, whether citizens and residents or aliens and nonresidents, and just as absolute in the one as in the other, a proposition which I understand is conceded by all of us; while under the California and Idaho statutes, and others of similar import, the title on the death of the intestate does not vest absolute or immediate in a nonresident alien but only conditionally, on the condition that such nonresident alien, within the time stated in the statute, appears and claims his right to succession and unless he so appears and makes such claim within such time title to the property never vested in him and his right to succession barred, and to that effect are such statutes construed by the courts of such states. But, as has been seen, our statute relating to succession has been by our court construed differently and to the effect that an alien nonresident inherits and has rights of succession the same as a citizen and resident. As pointed out in the prevailing opinion, it is competent for the Legislature to impose conditions upon which a nonresident alien may inherit or succeed to property left in the state by an intestate. But our statute, different from those of California and Idaho, imposes no such conditions. Hence the statutes require a different construction.

And then there is the further question whether a court sitting in probate in an estate, except of an intestate without heirs, has, even on presented issues whereby its action is sought to be invoked, authority to try and adjudicate an escheat. I think not. A court sitting in probate is not in so acting a court of general jurisdiction, but one of pre-

scribed and limited jurisdiction. Thus as the property un-distributed still was in the course of administration and in the custody and possession of the administrator, and his custody and possession that of the heirs, I think no escheat arose, and, as no proper action was invoked to adjudge any, and none triable presented for determination and adjudication, the court properly distributed the estate as was done; and hence the judgment should be affirmed.

PER CURIAM.

Subsequent to the announcement by the court of the foregoing opinion and judgment, as reported in 250 P. 469, and before the return of the remittitur to the district court having original jurisdiction of the proceeding, a petition has been filed on behalf of the administrator calling the court's attention to article 11 of a treaty existing between the United States of America and the Kingdom of Greece, which said treaty is contained in 33 U. S. Stats. at Large, part 2, page 2129, and which was in force at the date of the death of the deceased and during the time of the administration of said estate, which article, so far as material here, is as follows: "In the case of the death of any citizen of the United States in Greece, or of a Greek subject in the United States, without having any known heirs or testamentary executors by him appointed, the competent local authorities shall give information of the circumstances to the consular officers of the nation to which the deceased belongs, in order that the necessary information may be immediately forwarded to the parties interested. In all that relates to the administration and settlement of estates, the consular officers of the high contracting parties shall have the same rights and privileges as those accorded in the United States of America and Greece, respectively, to the consular officers of the most favored nation." Accompanying the petition are affidavits of the county clerk of Weber county, and ex officio clerk of the district court having

jurisdiction of this estate, that no notice was given to the vice consul or any one representing the kingdom of Greece, within the jurisdiction of the state of Utah or elsewhere. There is also an affidavit accompanying said petition from the vice consul of the Kingdom of Greece, having jurisdiction over the state of Utah, that he received no notice or information of the death of the intestate as provided in said article 11, and that no notice as therein provided was given by the local officers charged with the duty of giving such notice. The petitioners therefore ask that the order heretofore made and as set out in the above opinion be modified and set aside, and that such order be made and entered as will authorize the district court of Weber county to distribute the remainder of the estate to the heirs of said deceased as the same appear in the petition for distribution filed in that court by the administrator. Accompanying said petition is a stipulation on behalf of the Attorney General of the state of Utah, consenting that the order heretofore made and the judgment entered be modified, and an order made as requested in the petition this day filed herein by the administrator of said estate. It is therefore ordered that the order heretofore made, directing the district court of Weber county to distribute the assets of this estate to the state of Utah for the benefit of the public schools, be and the same is hereby set aside, and said court is directed to distribute the estate to the heirs mentioned in said petition heretofore filed in said district court in said proceeding by the administrator.