In the Matter of the ESTATE OF Vera Katz VERNON and Harold T. Katz, Deceased.

Treasurer of the State of Utah, Appellant.

No. 18424.

Supreme Court of Utah.

Feb. 22, 1983.

---

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for appellant.

Nolan J. Olsen, Midvale, Walter Ellett, Murray, for respondent.

PER CURIAM:

The Treasurer of the State of Utah appeals from an order of the district court determining that the estate of Harold T. Katz, and that of his sister, Vera Katz Vernon, had not escheated to the State for the benefit of the school fund. The court ordered Harold's estate to be distributed to the estate of Vera Katz Vernon, and the latter to be distributed in equal shares to Audrey Hampton Tandy and Sybil Beck Barrett, claimants and respondents here. We affirm.

Harold T. Katz died intestate on October 23, 1965. He was not survived by spouse, issue or parent, but was survived by his sister, Vera Katz Vernon. Vera Katz Vernon died intestate four days later, on October 27, 1965. Vera was not survived by spouse, issue, parent, brother or sister, or issue of brother or sister.

The statute in effect in 1965, under which the parties to this action claim, provided:[1]

74–4–5. When any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this title or in the Probate Code, subject to the payment of his debts, in the following manner:

\* \* \* \* \* \*

(6) If the decedent leaves neither issue, husband, wife, father, mother, brother nor sister, nor children or grandchildren of any deceased brother or sister, the estate must go to the next kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.

\* \* \* \* \* \*

(9) If the decedent leaves no husband, wife, or kindred, and there are no heirs to take the estate or any portion thereof, the same shall escheat to the state for the benefit of the school fund.

Walter R. Ellett was appointed administrator of each estate, on November 30, 1965, and January 12, 1966, respectively. The administrator found two or three bank accounts in Harold's name, and two parcels of real property. One of said parcels had been sold on a long-term real estate contract which was not fully paid until 1979; the other was held in the names of Harold Katz and Vera Katz Vernon. This one-half interest in real property was apparently the only asset of the estate of Vera Katz Vernon other than her interest as sole heir of her brother's estate. The administrator held, at the date of the trial in this matter, approximately $32,000 in cash.

Notice to creditors was duly published in each estate in 1966, but no notice to heirs of the estate was then published. Shortly after April 28, 1967, Hope Fairbanks Nessen contacted the administrator and advised him that there were heirs of the estates. Mrs. Nessen provided the administrator with genealogical records and addresses of some of the possible heirs. The identified persons were all children of decedents' first cousins (cousins once removed), traced through their father. A letter was sent over Mrs. Nessen's signature to all of the identified persons asking them to verify their relationship to the decedents. The administrator received no replies. Only one letter was returned undelivered.

---

1. All statutory references are to Utah Code Annotated, 1953, as in effect in 1965, unless otherwise noted.

On June 17, 1969, the administrator sent another letter to the list of possible heirs, entitling the letter "Determination of Heirs," and requesting that said possible heirs contact him or the court. In this letter, the administrator warned the relatives that if no heirs were established, the estates might escheat to the State of Utah. The administrator also advised these relatives that the estates would not be distributed for another eight years, at the time the real estate contract was paid in full. No reply was received by the administrator.

The real estate contract was fully paid in 1979. On August 8, 1979, the administrator again sent letters to all of the relatives on his list stating that he was ready to close the estate, and asking them to contact him. He received no reply.

On May 9, 1980, the Utah State Attorney General sent notices to the administrator that the State would claim the estates under the escheat statutes. On May 29, 1980, the administrator filed a "Petition to Determine Interests in Estate," praying that an order be entered directing service of notice by mail and by publication to all heirs to appear and prove heirship. This petition was granted and such notice was duly published and sent by mail. Three persons appeared and filed claims: Sybil Beck Barrett and Audrey Hampton Tandy, both first cousins once removed, whose names were on the administrator's list, and Hope Fairbanks Nessen, a first cousin twice removed, whose mother's name was on the list, and who had provided the administrator with the genealogical chart in 1967. Each of the three claimants claimed through the same ancestor.

The Treasurer of the State of Utah filed his petition for complete settlement of the estates on June 6, 1980, claiming that the estates had escheated to the State under either § 75–12–29 or § 75–12–27, which said sections were in effect at the dates of these deaths, but have since been repealed.

At the trial on the Treasurer's petition, Audrey Hampton Tandy testified concerning her relationship to the decedents, and testified that the notice she received from the court was the only notice she received concerning these matters. Sybil Beck Barrett did not testify, but her relationship to the decedents was established by Hope Fairbanks Nessen.

The court found that the administrator had notice that living heirs existed shortly after April 28, 1967, and that once heirs were established, the State had no further interest in the estates. The court further found that the notice to creditors was not notice to heirs; that no notice which complied with due process was given to heirs until May of 1980 when the court issued notice to appear and prove heirship; and that that notice was the only notice actually received by the claimants, Sybil Beck Barrett and Audrey Hampton Tandy. The court found that these two claimants were one degree closer in relationship to decedents than was Hope Fairbanks Nessen. The court ordered the administrator to submit his accounting, and to distribute the residue of the estate, after payment of expenses, in equal shares to Sybil Beck Barrett and Audrey Hampton Tandy.

On appeal, the Treasurer contends that the State is entitled to distribution of the combined estates under § 75–12–27, which provided in 1965:

75–12–27. When any person appears and claims the money paid into the treasury, the court making the distribution must inquire into such claim, and, being first satisfied of his right thereto, must grant him a certificate to that effect under its seal; and upon presentation of the certificate to him the clerk of the court must draw his requisition on the state auditor for the amount; and upon presentation to him of such requisition the state auditor shall draw his warrant on the state treasurer in the sum called for in said requisition. If no claimant appears within five years after the decedent's death to claim succession, the property or the proceeds thereof shall escheat to the state for the benefit of the state school fund.

As no claimant appeared within five years of these deaths, the Treasurer argues

that the estates escheated under the last sentence of the statute. He relies on the interpretation given the predecessor of this statute in *In re Apostolopoulos' Estate,* 68 Utah 344, 250 P. 469 (1926), as amended at 253 P. 1117 (1926).

In *Apostolopoulos,* the decedent died on October 18, 1918, in Weber County, Utah. A creditor applied for and was granted letters of administration of his estate. The administrator published notice to creditors, paid debts, and then filed an accounting to the court, after publishing notice of the same. Six and a half years after decedent's death, his widow, a resident of Greece, claimed the residue of the estate on behalf of herself and her children, the issue of the decedent. This Court held that the widow's claim was not timely though she had no actual notice of the death or of the proceedings in the estate; though the administrator still held the assets; and though the State did not appear and claim an escheat until after the identity of the heirs was established. Justice Frick, writing for a majority of three members of the Court, held that under the last sentence of the above statute, an estate automatically escheats five years after the death of a decedent unless an heir appears and claims the estate within that time.

Justices Gideon and Straup filed separate dissents, noting that in this state property vests immediately in the heirs upon death, and that heirs are not required to make any formal appearance or demand for distribution of the estate at any time. They were of the opinion that the majority of the Court construed the last sentence out of context, and that the five-year limitation in § 75–12–27 applies only after the estate has been distributed to the treasurer as implied by the first sentence of that statute. The dissenters were further of the opinion that before an heir can be divested of his vested interest in an estate, due process requires that notice of escheat proceedings be given to heirs, and the State's right of escheat judicially determined. Justice Gideon said:

> [E]scheats not being favored in the law, and the title being by operation of the

statute vested in the heir, until some proceeding is taken as provided by the Code and a decree of court obtained adjudging an escheat, it would and must logically follow that when a rightful heir does appear and claims the estate before the escheat is decreed, the probate court must of necessity decree the property to such heir.

68 Utah at 366, 250 P. 469.

 We believe the reasoning of the dissenting opinions to be sound. The statute is at best ambiguous, and as escheats are disfavored in the law, the statute should be construed in favor of known heirs. When considered with those statutes preceding and following, it appears that the five-year limitation was meant to limit recovery of funds which had been delivered to the state treasurer pursuant to a determination by the probate court that decedent died without heirs. Once an heir is discovered, the estate does not escheat.

The Treasurer contends that the majority opinion in *Apostolopoulos* is controlling since it has never been overruled. We note, however, that the case has never been followed, including in the *Apostolopoulos* case itself. There the estate was distributed to the Grecian heirs in accordance with a treaty between the United States and Greece. See the Per Curiam opinion at 68 Utah 381, 253 P. 1117. We do not consider the case to be valid precedent under such circumstances, but to the extent it might be so considered, it is overruled.

The State also claims that these estates escheated pursuant to §§ 75–12–28 and –29, which provide for the appointment of a special administrator to administer the estates of intestates who die without heirs, and escheat of the property two years after such appointment. But again, the statutes clearly apply only to those cases in which there are no heirs, and do not apply here. The district court found, and the evidence shows that the administrator had knowledge of the existence of heirs within two years of his appointment.

The Treasurer also argues that the statutes impose an affirmative duty on poten-

tial heirs to appear and claim the estate within a reasonable time after notice. The court found and we affirm that the only notice received by the heirs which comported with due process was the notice sent by the court in May of 1980. Further, we find nothing in our law which imposes an affirmative duty on potential heirs to appear and claim the estate, other than the notice of May, 1980. As noted by Justice Gideon, quoted above, due process requires that notice of escheat proceedings be given before the court may adjudicate an escheat to the State.[2] When the heirs appeared, the court was not in error in denying the State's petition to declare an escheat.

Finally, the Treasurer claims that 23/25 of these estates escheated on the theory that the names are known of 23 possible heirs who are in an equal degree of relationship to those who claimed, and there has been no evidence or determination that such persons are deceased. In so arguing, the Treasurer again contends that the law imposes an affirmative duty on the heirs to come forward and prove their heirship. Although the new probate code, which became effective on July 1, 1977, provides procedure by which heirs may be determined by the court, and limitations upon claims of heirs who do not appear timely for such a determination,[3] we find nothing in the statutes or law prior to that code which imposes an affirmative duty on an heir to come forward to claim the estate. Neither is there a duty on the part of the heirs to prove that all other possible heirs are deceased. Those who appear and prove their relationship are entitled to share the estate equally, under § 74–4–5, above, and, as the district court found, the State has no interest unless there are no heirs who are entitled to the estate.[4]

The judgment of the district court is affirmed, and this case is remanded for further proceedings.

HOWE, J., does not participate herein.

---

2. See *Provident Institution for Savings v. Malone,* 221 U.S. 660, 31 S.Ct. 661, 55 L.Ed. 899 (1911), and *Security Savings Bank v. California,* 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301 (1923). In both cases, the U.S. Supreme Court held that escheat statutes do not violate due process provided they provide for adequate notice and an opportunity to be heard.

3. This procedure was properly used in these proceedings, under § 75–8–101 of the 1977 probate code.

4. Compare § 75–2–105 of the current code, which provides that the estate escheats if there is "no taker."